## In re SWAN, Petitioner.

. ORIGINAL.

No. 10. Original.   Argued November 20, 1893. — Decided December 18, 1893.
. .  ·

A writ of *habeas corpus* cannot be used to perform the office of a writ of error or appeal.

When a person is imprisoned under a judgment of a Circuit Court which had no jurisdiction of the person or of the subject-matter, or authority to render the judgment, and no writ of error or appeal will lie, then relief may be accorded by writ of *habeas corpus*.

S. claiming to act as a constable in the State of South Carolina, and to act under the statute of that State touching intoxicating liquors known as the Dispensary Act, seized without warrant and carried away a cask of liquor which had been brought into the State by a receiver operating a railroad under authority of the Circuit Court of the United States for ·that district, and was held by him as an officer of that court, awaiting its delivery to the consignee.  The receiver applied to the court which appointed him, setting forth the facts, and praying that S. be attached . and punished for contempt, and be required to restore the property. A rule to show cause issued and S. appeared and made answer.. The court adjudged him to be guilty of contempt, ordered him to be imprisoned until he return the property, and when that should be done that. he be imprisoned for a further period of three months, and until he should pay the costs.    ·
*Held,*  ·
   (1) That the Circuit Court had jurisdiction;
   (2) That its determination that the act of S. was illegal, and that he was in contempt, was not open to review in this proceeding;
   (3) That it was not necessary to determine whether he could be required to pay the costs, as he had not yet restored the goods, nor suffered the three months' imprisonment.

The possession of property by the judicial department, whether Federal or state, cannot be arbitrarily encroached upon, without violating the fundamental principle which requires coördinate departments to refrain from interference with the independence of each other.

By an order of the Circuit Court of the United States for the District of South Carolina in the case ·of *F. W. Bound* v. *The South Carolina Railway Company and others*, Daniel H. Chamberlain was appointed receiver of the railway company;

and all of its property was placed under his care and management and protected by injunction. In the operation of the railroad as a common carrier, there was delivered to the receiver April 12, 1893, a barrel of liquor shipped by citizens of North Carolina from Statesville in that State, and consigned to their agents in Charleston, South Carolina. By reason of some confusion arising over the bill of lading, or from the markings on the barrel, there was difficulty in discovering the consignees, and the barrel was stored in the warehouse of the railroad company awaiting the result of an investigation in that particular.

An act of the general assembly of South Carolina, commonly called the Dispensary Law, and entitled "An act to prohibit the manufacture and sale of intoxicating liquors as a beverage. within this State, except as herein provided," was approved December 24, 1892, and by its terms was to go into full operation July 1, 1893. Acts South Carolina, 1892, No. 28, p. 62.

On the first of August, 1893, while the matter of the ascertainment of the consignee was being investigated and the barrel was in the warehouse of the receiver, freight unpaid, one C. B. Swan entered the warehouse, seized the barrel, took it out of the custody of the receiver, and deposited it in the jail of Charleston County, in the care of the sheriff. Swan showed no authority either from the consignee or the consignor of the goods, and produced no warrant by virtue of which the seizure was made. When questioned by the receiver, the sole authority referred to by him was his commission as a constable of the State. His suspicions had been excited respecting this barrel, it having been, presumably from necessity, removed from one part of the floor of the warehouse to another, and he acted on his suspicions. It was admitted that he took the course he did of his own motion without instructions from any one in the legal department of the State, and probably without instructions from any other person. After the seizure the goods remained in the place where deposited by Swan without any proceeding or application whatever until on August 7, 1893, the receiver filed his petition in the Circuit Court in the case in which he was appointed, setting forth the

facts and praying that Swan be attached and punished for contempt of court in seizing the goods without warrant, and that he be compelled to restore them to the receiver's custody for delivery to the consignee. A rule to show cause was accordingly entered, to which Swan made answer, disclaiming any purpose to commit contempt of court, but justifying the seizure under the Dispensary Act, and making no offer to restore the goods. The court after full hearing ordered that the rule be made absolute, and committed him to the custody of the marshal to be imprisoned in the jail of Charleston County until he returned, "to the custody of the receiver, the barrel taken by him from the warehouse without warrant of law. And when that has been surrendered that he suffer a further imprisonment thereafter in said county jail for three months and until he pay the costs of these proceedings."

In its opinion, the court, (Simonton, J.,) after stating the facts, said: "Were this a simple case of interference with property in the hands and custody of this court, without notice to it, and without action on its part, its settlement would be easy. Were it even based upon a charge of violation of the law on the part of the receiver, and sustained by a mandate issuing from any proper authority, the court would not be slow to believe that the manner of the execution of the mandate arose from inadvertence, and would lend its aid to an investigation of the charge, and a due execution of the law. As a common carrier, the receiver is bound to respect and obey the laws of the State. He and the court from whom he holds his appointment are servants of the law, exceptionably bound to pay it the utmost deference and respect. But the real issue in this case is vastly more important than an interference with property in the hands of the court. It is far reaching in its consequences, and concerns, not only the receiver, but every other citizen. Has any constable the right, without warrant, to search premises, and to seize property, when he suspects that a violation of the law is intended?"

The various sections of the Dispensary Act were then considered and the result reached that a constable had no authority to so search and seize under the terms of the act, on general

principles, or under the constitution of South Carolina, and it was said in conclusion :

" In the case now before us there is not even the excuse for haste. The goods were stored and kept in a warehouse, not at a place for sale. No concealment whatever was practised. In his answer the respondent says that for several days he saw the package, and watched it. Any notification to this court would have absolutely secured him from any removal of it. Within his reach, at any hour of the day, he could have gone before any justice or judge, and could have obtained, or at least could have sought, a warrant. The process of law was within his reach. Even when he searched and seized the package, he openly disregarded the law. For eight days he remained inactive, taking no steps whatever to justify, support, or legalize his action. It does not appear even that he reported it to any one. His contempt of private rights went far beyond his disregard of the existence and authority of this court."

Swan, having been committed, presented his petition for the writ of *habeas corpus,* and a rule having been entered thereon, and a return having been duly made thereto, the application was heard by this court upon the petition and return, and the accompanying exhibits, which included the opinion, now reported in 57 Fed. Rep. 485.

By the first section of the Dispensary Act it was provided that after July 1, 1893, the manufacture, sale, barter, or exchange, or the keeping or offering for sale, barter, trade, or exchange, within the State, of intoxicating liquors, should be regulated and conducted as provided in the act.

The second section provided for the appointment of a commission to purchase all intoxicating liquors for lawful sale in the State and to furnish the same to persons designated as dispensers thereof, to be sold as prescribed.

In all purchases or sales made by the commissioner it was made his duty to cause a certificate to be attached to each and every package, " and without such certificate any package containing liquors which shall be brought into the State, or shipped out of the State, or shipped from place to place within

the State by any railroad, express company, or other common carrier, shall be regarded as intended for unlawful sale."

The following are applicable sections of the act, some immaterial parts being omitted :

"Sec. 22. All places where intoxicating liquors are sold, bartered or given away in violation of this act, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of this act, are hereby declared to be common nuisances ; and if the existence of such nuisance be established, either in a criminal or equitable action, upon the judgment of a court, or judge having jurisdiction, finding such place to be a nuisance, the sheriff, his deputy, or any constable of the proper county or city where the same is located, shall be directed to shut up and abate such place by taking possession thereof, if he has not already done so, under the provisions of this act; and by taking possession of all such intoxicating liquors found therein, together with all signs, screens, bars, bottles, glasses, and other property used in keeping and maintaining such nuisance ; and such personal property so taken possession of shall, after judgment against said defendant, be forthwith· confiscated to the State. . . .

"Sec. 23. The attorney general, his assistant, the circuit solicitor, or any citizen of the county where such nuisance exists, or is kept or maintained, may maintain an action in the name of the State to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action in the usual manner of granting injunctions, except that the affidavit or complaint, or both, may be made by the attorney general, his assistant or the solicitor of the circuit, upon information or belief, and no bond shall be required ; and if an affidavit shall be presented to the court or judge, stating or showing that intoxicating liquors, particularly describing the same, are kept for sale, or are sold, bartered or given away on the premises, particularly describing the same, where such nuisance is located, contrary to law, the court or judge shall at the time of granting the injunction issue his orders, commanding the officer serving the writ of injunction, at the time

of such service, diligently to search the premises and carefully to invoice all the articles found therein, used in or about the carrying on of the unlawful business, for which search and invoicing said officer shall receive the fees now allowed by law for serving an injunction. If such officer upon such search shall find upon any such premises any intoxicating liquor, or liquors of any kind, in quantity going to show it was for the purpose of sale or barter, he shall take the same into his custody and turn over the same to the sheriff of the county, who shall securely hold the same to abide the final judgment of the court in the action (the expenses for holding to be taxed as part of the costs of the action); and such officer shall also take possession of all personal property found on such premises, and turn over the same to the sheriff of the county, who shall hold the same until the final judgment in the case. The finding of such intoxicating liquors on such premises, with satisfactory evidence that the same was being disposed of contrary to this act, shall be *prima facie* evidence of the nuisance complained of. Liquors seized as hereinbefore provided, and the vessels containing them, shall not be taken from the custody of the officer in possession of the same by any writ of replevin or other process while the proceedings herein provided for are pending; and final judgment in such proceedings in favor of the plaintiff shall, in all cases, be a bar to all suits against such officer or officers for recovery of any liquors seized, or the value of the same, or for damages alleged to arise by reason of the seizure and detention thereof. Any person violating the terms of any injunction granted in such proceedings shall be punished for contempt. . . .

"SEC. 24. It shall be the duty of the sheriffs, deputy sheriffs and constables having notice of the violation of any of the provisions of this act to notify the circuit solicitor of the fact of such violation, and to furnish him the names of any witnesses within their knowledge by whom such violation can be proven. . . . .

"SEC. 25. No person shall knowingly bring into this State, or knowingly transport from place to place within this State, by wagon, cart or other vehicle, or by any other means or

mode of carriage, any intoxicating liquors with the intent to sell the same in this State in violation of law, or with intent that the same shall be sold by any other person, or to aid any other person in such sale, under a penalty of five hundred dollars and costs for each offence, and in addition thereto shall be imprisoned in the county jail for one year. In default of payment of said fine and costs the party shall suffer an additional imprisonment of one year. Any servant, agent or employé of any railroad corporation, or of any express company, or of any persons, corporations or associations, doing business in this State as common carriers, who shall remove any intoxicating liquors from any railroad car, vessel or other vehicle of transportation, at any place other than the usual and established stations, wharves, depots or places of business of such common carriers within some incorporated city or town, where there is a dispensary, or who shall aid in or consent to such removal, shall be subject to a penalty of fifty dollars and imprisonment for thirty days for every such offence: *Provided,* That said penalty shall not apply to any liquor in transit when changed from car to car to facilitate transportation. All such liquors intended for unlawful sale in this State may be seized in transit, and proceeded against as if it were unlawfully kept and deposited in any place. And any steamboat, sailing vessel, railroad, or express company, or other corporation, knowingly transporting or bringing such liquors into the State shall be punished upon conviction by a fine of five hundred dollars and costs for each offence. Knowledge on the part of any authorized agent of such company shall be deemed knowledge of the company.

"Sec. 26. The governor shall have authority to appoint one or more state constables at a salary of two dollars per day and expenses, when on duty, to see that this act is enforced, the same to be charged to the expense account of the state commissioner."

*Mr. D. A. Townsend,* Attorney General of the State of South Carolina, for the petitioner.

I. The Circuit Judge had no jurisdiction of the matter involved in the proceedings for contempt.

The petitioner was attached for contempt while discharging his duty as an officer of the State, in the execution of a valid police law, and in doing so he was not violating the Constitution or laws of the United States, nor any order, process, or decree of any court or judge thereof. The Circuit Court had no jurisdiction of the matter. Rev. Stat. § 753, and cases noted; Gould & Tucker's Notes to § 753, p. 219.

II. That judge exceeded his authority in attaching the petitioner for contempt. The Dispensary Law is a valid police law. It is to be observed that the Circuit Judge bases his judgment solely upon the ground that the petitioner, as state constable, had no right to seize the liquor without a warrant, as such seizure was forbidden by the constitution of the State; and only for that reason holds that such seizure was an improper interference with the receiver. It will also be seen that he concedes that the receiver "as a common carrier is bound to respect and obey the laws of the State."

The validity of the Dispensary Law, both in its general and particular provisions, will be shown by the following considerations:

(a) The legislature of the State is that department of the government in which the sovereign police power of the people is exclusively lodged, and it is restrained in the exercise of such power only by the provisions of the state constitution, which expressly, or by necessary implication, limit it, and cannot be restrained by Federal law. *Western Union Tel. Co.* v. *Pendleton*, 122 U. S. 347, 359; *New Orleans Gas Light Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 661; *Barbier* v. *Connolly*, 113 U. S. 27; *City of New York* v. *Miln*, 11 Pet. 102, 139.

In *Crowley* v. *Christensen*, 137 U. S. 86, 91, it is said:

"It" (sale of liquor) "is a question of public expediency and public morality, and not of Federal law. The police power of the State is fully competent to regulate the business — to mitigate its evils or to suppress it entirely. . . . The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as

it may deem proper the power of passing upon applications for permission to·carry it on and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power. conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the State: nor is it one which can be brought under the cognizance of the courts of the United States." See also *Trageser* v. *Gray*, 73 Maryland, 250, 260 ; *Giozza* v. *Tiernan*, 148 U. S. 657 ; *The License Cases*, 5 How. 504, 631, 632 ; *Mugler* v. *Kansas*, 123 U. S. 623, 660 ; *The State* v. *Wheeler*, 25 Connecticut, 290, 297.

(*b*) The provisions of the Federal and state constitutions which limit legislative power are only intended to protect the individual citizen against any infringement upon his private rights by the public, and only apply when there is such infringement. In regard to the traffic in intoxicating liquors, no citizen has the inherent right to sell them. *Giozza* v. *Tiernan*, 148 U. S. 657 ; *Bartemeyer* v. *Iowa*, 18 Wall. 129 ; *Mugler* v. *Kansas*, 123 U. S. 623 ; *Crowley* v. *Christensen*, 137 U. S. 86, 91.

(*c*) It follows, therefore, as a general conclusion from the two foregoing propositions, that the constitutional provisions, which are the bulwarks of private rights against public power, do not apply in the matter of the police regulation of the liquor traffic by the State, and the legislature is wholly unlimited in the exercise of its power, save by its discretion as to the extent and manner thereof.

(*d*) In the light of. this general conclusion of law it may be assumed that the Dispensary Law is a valid police law.

III. It is not necessary to cite any authority to show that the trade in intoxicating liquors is a matter fully within the police power of the State, and that there is a necessity for the exercise of such power in regard thereto. The validity of this Dispensary Law, both in its general purpose and scope and in its particular provisions, is shown by the authority already cited. The only general objection urged against it is, that it creates a monopoly. This is not a sound objection. As has

been shown, no citizen of this country has a right to sell intoxicating liquors, and hence the people have no common right to engage in that trade as a business. When the legislature, in the exercise of the police power, sees fit to commit the control of that trade to the State, under such regulations as its discretion suggests, it does not deprive any citizen of his rightful business and does not create a monopoly in the proper and objectionable sense of that word.

Besides, as the prohibition or regulation of such trade rests entirely within the police power of the. legislature, it may make the license to sell intoxicating liquors exclusive in the State or in any corporation or citizen when deemed necessary. *The State* v. *Brennan's Liquors*, 25 Connecticut, 278.

This doctrine of monopoly by the State of the trade in intoxicating liquors is sustained in principle by the *Slaughter-House Cases*, 16 Wall. 36.

IV. It is also urged that the Fourteenth Amendment is violated by some of the provisions in the Dispensary Law. But the Dispensary Law being a police law, the Fourteenth Amendment cannot. impair its provisions. Besides, there is no discrimination which makes the clause class legislation. *Barbier* v. *Connolly*, 113 U. S. 27, 32; *Trageser* v. *Gray*, 73 Maryland, 250.

V. It is further contended: (1) that the statute does not authorize a seizure without warrant, and (2), that if it be construed to give such authority, it violates the provisions of the constitution respecting unreasonable searches and seizures. This provision of the constitution of South Carolina is substantially the same as the provisions of the Constitution of the United States and of. Maine, Massachusetts, and Vermont, in regard to searches and seizures. In the statutes of each of those States, as to intoxicating liquors, there is. an express provision allowing the proper officer to seize the liquor intended. for unlawful sale and to arrest the keeper of it " without warrant," and then to proceed formally in the matter, to its adjudication.

These provisions of statutes of Maine, Massachusetts, and Vermont as. to arrest and seizure " without a warrant " have

been construed and sustained by the highest courts in those states. *Jones* v. *Root*, 6 Gray, 435; *State* v. *O'Neil*, 58 Vermont, 140; *In re Powers*, 25 Vermont, 261; *The State* v. *McCann*, 59 Maine, 383; *The State* v. *Dunphy*, 79 Maine, 104.

VI. The position taken by respondent's counsel, that the liquors in question could not be seized by the petitioner, because it was in the custody of the law, is untenable.

It is admitted that all the property of the South Carolina Railway Company, when it passed into the hands of the receiver, went into the custody of the law, and that the receiver could not be arrested for obeying the order of the court in reference thereto; nor could his possession of the property be interfered with by seizure under execution. But the liquor in question was not in the custody of the law simply because it happened to be in the temporary possession of the receiver. It was no part of the property of the railway company that had been taken into the custody of the law, under and by virtue of the receivership thereof. The receiver had transported it as a common carrier, as the property of Lowenstein Bros., to Charleston, and there held it as their property for delivery to them as the owners. He sustained no other relation to the liquor than that which the railway company itself sustained to it, to wit, that which imposed the duty upon him to deliver it, if not prevented by the law, and allowed him to charge proper freight thereon.

So the receiver in this case being a common carrier, who had performed his duty as such in transporting the liquor, and then held it as the property of another, to be delivered upon payment of proper charges, had no higher rights in regard to the same than any other warehouseman would have.

It follows, therefore, that the liquor not being a part of the property of the railway company in the control of the court, and being the property of another, in temporary charge of the receiver or warehouseman, he could not properly hold it against the seizure by your petitioner, and the court could not protect him in refusing that obedience to a valid police law incumbent upon every citizen.

VII. The position taken by the respondent's attorney, that Rev. Stat. § 974, quoted by him, authorizes the punishment for contempt by both imprisonment and payment of the costs, is incorrect.

That section evidently refers to regular prosecutions for crimes, and has no reference to punishment for contempts under rule.

It must be concluded either that, if the costs are a fine, they cannot be imposed as joint punishment with imprisonment; or that, if not considered a fine, they are added as a part of the punishment, and are in excess of the limitation of the statute.

In either case, the express limitation upon the power to punish must control.

*Mr. Joseph W. Barnwell*, opposing.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

We reiterate what has so often been said before, that the writ of *habeas corpus* cannot be used to perform the office of a writ of error or appeal; but when no writ of error or appeal will lie, if a petitioner is imprisoned under a judgment of the Circuit Court which had no jurisdiction of the person or of the subject-matter, or authority to render the judgment complained of, then relief may be accorded. *In re Frederich*, 149 U. S. 70; *In re Tyler, Petitioner*, 149 U. S. 164.

The contention here is that the order of committal was wholly void for want of jurisdiction to make any order whatever, or to make the particular order.

1. To sustain the proposition that the court had no jurisdiction to commit, it is argued that the petitioner was in the discharge of his duty as an officer of the State in the execution of a valid police law of the State, authorizing the search and seizure; that his action was therefore justifiable, and judicial interference with him absolutely precluded.

The validity of the Dispensary Act was elaborately discussed

by counsel for petitioner, but we perceive no necessity for entering upon an examination of that question. The Circuit Court was of opinion that the act did not authorize a seizure without warrant. It was admitted below that such a seizure could not be made except under the authority of a statute conferring the power to do so, and nothing to the contrary has been adduced on this argument.

Any other view would be inconsistent with settled principles of the common law and with familiar constitutional provisions for the security of person and property and immunity from unreasonable searches and seizures. The original occasion for securing that immunity may have been the abuse of executive authority in the matter of obtaining evidence of political offences, but these safeguards are not therefore limited in their scope, and extend protection against every exertion in that direction of merely arbitrary power.

In some of the States authority to proceed in respect of liquors, without warrant in the first instance, is expressly given by statute, but is accompanied by the provision that when the seizure is so made, the property seized is to be kept in safety for a reasonable time until a warrant can be procured, and it is held that, should the officer neglect to obtain a warrant within such time, he will be liable as a trespasser. *Kent* v. *Willey*, 11 Gray, 368; *Weston* v. *Carr*, 71 Maine, 356. In *Kennedy* v. *Favor*, 14 Gray, 200, 202, Chief Justice Shaw said: "The authority to seize liquors without a warrant, though sometimes necessary, is a high power; and, being in derogation of common law right, it is to be exercised only where it is clearly authorized by the statute or rule of law which warrants it."

In his examination of the Dispensary Act the learned judge holding the Circuit Court pointed out that it was to be strictly construed and not to be extended beyond the import of its terms. *Northern Pacific Railroad* v. *Whalen*, 149 U. S. 157. The act could not be regarded as dealing with intoxicating liquors as if they were a deadly poison whose presence was noxious *per se*, which might justify an enlarged construction of the language of the statute to the end that so fearful a nui-

sance might be abated, for their use as a beverage was recognized, and their sale placed in the hands of public officials. Moreover, it was not admissible to hold by construction that the statute had authorized the seizure of the goods without warrant, in view of section twenty-two of article I. of the constitution of South Carolina, which declared that "all persons have a right to be secure from unreasonable searches, or seizure of their persons, houses, papers, or possessions. All warrants shall be supported by oath or affirmation, and the order of the warrant to a civil officer to make search or seizure in suspected places, or to arrest one or more suspected persons, or to seize their property, shall be accompanied with a special designation of the persons or objects of search, arrest, or seizure, and no warrant shall be issued but in the cases and with the formalities prescribed by the laws."

Indeed, the statute upon any reasonable construction did not contemplate action without process. By the twenty-second section, places where intoxicating liquors were sold, bartered, or given away, or where persons were permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors were kept for sale, barter, or delivery, in violation of the act, were declared to be common nuisances, and if the existence of such nuisance were established, either in a criminal or equitable action, upon the judgment of a court or judge having jurisdiction, finding the place to be a nuisance, it was to be abated and the liquors and accessories taken possession of and confiscated.

Under section twenty-three, such places might be enjoined and abated by action in the name of the State, careful provision being made that orders for the search and seizure of the goods should only be issued upon an affidavit stating or showing that intoxicating liquors particularly described were kept for sale, or sold, bartered, or given away on the premises, particularly describing the same.

The twenty-fifth section provided that liquors in transit intended for unlawful sale in the State might be seized and proceeded against as if "unlawfully kept and deposited in any place," and were therefore not subject to seizure without pre-

liminary proceeding or judicial action, as provided in sections twenty-two and twenty-three in regard to liquors so unlawfully kept and deposited. So far from the argument being well founded that because the provisions of the twenty-second and twenty-third sections were not expressly repeated in the twenty-fifth, it was to be inferred that they were dispensed with, the provision that liquors in transit might be seized and proceeded against as if " unlawfully kept and deposited in any place," made them a part of the section by reference, and it was in accordance with those sections that such property could be condemned; and that that involved here was turned over by petitioner to the sheriff of Charleston County. The duties of a constable were under section twenty-four to notify the circuit solicitor of the violation of any of the provisions of the act under section twenty-four, and under section twenty-two, if the existence of the nuisance therein mentioned were established either in a criminal or equitable action, he might be directed to abate the place by taking possession thereof. Certainly, seizure by him without warrant or judicial action was not expressly authorized by the statute nor by implication upon any canon of construction applicable to an act creating offences unknown to the common law and authorizing confiscation.

It is insisted that the Circuit Court was in error in the views it entertained and the conclusion reached in accordance therewith. But this objection is of error merely, and does not go to the power of the court in the premises. Judgments of courts, whether Federal or state, cannot be treated as void and attacked collaterally on *habeas corpus*, even if error has actually supervened.

It must be remembered that this property was in the custody of the officer of the court; that it had been brought into the State before the act went into operation; that it had not been delivered because of imperfect address; that there was no concealment and no occasion for haste; and that there was no difficulty in the way of application to the court, to have the goods detained or for permission to withdraw them from the receiver's possession. Nothing can be clearer than that

the court had jurisdiction to determine whether the goods were retained in violation of the laws of the State; whether the receiver in conducting the business of the railroad in respect of the transportation of this barrel was proceeding "according to the valid laws of the State" as provided by the second section of the act of Congress of March 3, 1887, (24 Stat. 552, c. 373,) and whether the seizure was authorized by any law of the State.

The possession of property by the judicial department, whether Federal or state, cannot be arbitrarily encroached upon without violating the fundamental principle, which requires coördinate departments to refrain from interference with the independence of each other, *In re Tyler, Petitioner,* 149 U. S. 164, and the position that a petty officer can take property from the possession of a court without permission and without warrant, "upon his own motion and without instructions from any other person," as petitioner admits he did, because in his view the duty is imposed upon him by a particular statute, and that the court is without power to pass upon the questions involved, or, if it does so, that its judgment may be treated with contemptuous defiance, is utterly inadmissible in any community assuming to be governed by law.

We entertain no doubt whatever that the Circuit Court had jurisdiction, and it necessarily follows that its determination that the action of the constable was illegal, and that he was in contempt in seizing and persisting in holding the property, is not open to review in this proceeding.

2. It is further contended that the court exceeded its power in that the payment of costs was required, because the costs were in the nature of a fine, and therefore the punishment inflicted was both fine and imprisonment. Under section 970 of the Revised Statutes, when judgment is rendered against a defendant in a prosecution for any fine or forfeiture, he shall be subject to the payment of costs, and on every conviction for any other offence, not capital, the court may in its discretion award that the defendant shall pay the costs of the prosecution; and as contempt of court is a specific criminal offence, it is said that the judgment for payment of costs

would appear to be within the power of the court, although by section 725 it is provided that contempts of the authority of courts of the United States may be punished " by fine or imprisonment, at the discretion of the court." But be that as it may, the sentence here was that the petitioner be imprisoned " until he returns to the custody of the receiver, the barrel taken by him from the warehouse without warrant of law. And when that has been surrendered, that he suffer a further imprisonment thereafter in said county jail for three months and until he pay the costs of these proceedings.' As the prisoner has neither restored the goods nor suffered the imprisonment for three months, even if it was not within the power of the court to require payment of costs and its judgment to that extent exceeded its authority, yet he cannot be discharged on *habeas corpus* until he has performed so much of the judgment or served out so much of the sentence as it was within the power of the court to impose. *Ex parte Lange,* 18 Wall. 163; *Ex parte Parks,* 93 U. S. 18.

*The application for the writ of habeas corpus is denied.*