WAYNE KNITTING MILLS et al. v. NUGENT.

(District Court, D. Kentucky. November 1, 1900.)

1. BANKRUPTCY — CUSTODIAN OF MONEY OF BANKRUPT—JURISDICTION OF REFEREE TO ORDER PAYMENT TO TRUSTEE.

An insolvent, shortly before the filing of a petition in involuntary bankruptcy against him, caused a large sum of money, which was his property, to be paid to his son, as his agent and custodian. After the father had been adjudged a bankrupt, on application of his trustee the referee issued an order requiring the son to show cause why he should not be required to pay the money to the trustee, to which order, when served on the respondent, he filed a response in which he denied the jurisdiction of the referee, but made no denial of his possession of the money, and no claim to it, or any part of it, as his own. On such response the referee ordered him to pay the money to the trustee, and, on his failure to comply with the order, adjudged him in contempt. *Held* that, in the absence of any claim to the money by the respondent, he could not be regarded as holding it adversely to the bankrupt, but he must be taken to have held it merely as agent, first for the bankrupt, to whom it belonged, and later for his trustee, who succeeded to his rights therein, and, the money being constructively in the possession of the court, the referee had jurisdiction, under the provisions of Bankr. Act, § 2, to bring the respondent into the proceedings, and to make the order with reference thereto in a summary manner, and that the court was empowered by section 2, subd. 13, of such act to enforce such order by imprisonment.

2. SAME—CONTEMPT—REFUSAL TO OBEY ORDER OF REFEREE.

The fact that respondent was under indictment, charged with a violation of Bankr. Act, § 29, in having received and retained such money for the purpose of defeating the operation of the bankrupt law, furnished no excuse for his failing to make a full disclosure of the facts in response to the referee's order to show cause, on the ground that such disclosure would tend to incriminate him, nor for his failure to obey the order of the referee, since he would not be incriminated by either a denial or an admission of the receipt of the money prior to the filing of the petition in bankruptcy, nor by any claim he might make to the same, nor would his right thereto be prejudiced by his paying over the money in obedience to the order.

In Bankruptcy.

W. W. & J. R. Watts, for trustee.

W. M. Smith, Zack Phelps, and Fred Forcht, Jr., for respondent.

EVANS, District Judge. In this case the petition in involuntary bankruptcy was filed against the bankrupt about 5 o'clock p. m.

February 19, 1900. Some hours earlier on that day the bankrupt, who for many years had been a prominent retail dry-goods merchant in the city of Louisville, Ky., sold and delivered to Herman Straus, another retail dry-goods merchant in the same city, his entire stock of merchandise, which was thereafter very speedily removed to the latter's store. The agreed price was $12,000, and early in the afternoon of the same day a check on the German Bank for that amount, payable to the bankrupt, was given by the purchaser to him. He at once indorsed it, and handed it to his son and agent, W. T. Nugent, the respondent, to get for him the cash upon the check, which by 2 o'clock p. m. the respondent had done. On the 9th day of February, 1900, the bankrupt had mortgaged the house and lot in Louisville in which he resided to George L. Everbach and Frank Hohmann, executors, for $4,500; and this money on the same day, or soon thereafter, came to the hands of the respondent, as agent of his father. Out of the $12,000 thus obtained there were paid certain sums which are not in controversy, and out of the $4,500 thus obtained certain other sums were paid, about which we need not concern ourselves. But at the time of the filing of the petition and at the time of the adjudication, on March 23, 1900, the respondent held in his hands, as custodian and agent for his father, $10,100 received on the $12,000 check, and $4,133.45 received out of the proceeds of the mortgage. The creditors appointed Arthur E. Mueller trustee for the bankrupt's estate, and he on the 13th day of April, 1900, filed a petition before the referee asking for a rule against the bankrupt to show cause why he should not be required to pay the two sums last above mentioned, amounting to $14,233.45, to the trustee. The bankrupt appeared, and, in substance, stated, in his response to the rule, that the entire sum was in the hands of his son, who had gone he knew not whither, and he found it impossible to pay the money for that reason. The referee, thinking this response insufficient, so adjudged, and ordered the bankrupt to pay the entire sum to the trustee. The bankrupt failing to do this, the referee held him to be guilty of contempt, and reported his action to the court, with the recommendation that the bankrupt be punished therefor. Pending the action of the court upon this report and recommendation, the bankrupt's counsel suggested to the court that the bankrupt, then about 80 years of age, was mentally unsound, whereupon the court ordered, and late in June, 1900, had, a special hearing upon this phase of the case, and was of opinion, from the evidence of the medical experts, that approaching senile imbecility possibly then made the bankrupt an unfit subject of punishment, or of the summary processes of the court. At all events, he was given the benefit of the doubt. For several months thereafter the son, W. T. Nugent, the respondent, had continued in hiding, but in October, 1900, was found, and soon afterwards was indicted in this court upon charges of receiving and concealing certain assets of the bankrupt. On the 13th day of April, 1900, upon the petition of the trustee, the respondent, W. T. Nugent, was enjoined from disposing of all or any part of the said sum thus in his hands, and was then ordered to show cause, if any

he could, within five days from the service of a copy of the order, why he should not be required to pay said sum of money to the said trustee. A copy of that order was served upon the respondent on October 8, 1900. On the 13th day of October he filed his sworn response in the following language: ·

"Defendant W. T. Nugent, for response to the order made herein on April 13, 1900, requiring him to appear and show cause why he shall not be required to pay $14,435.95·to the trustee herein, says that, as shown by the pleadings, records, and the evidence in this case taken, and the entire proceedings had herein, neither the court nor the referee in bankruptcy herein has any jurisdiction, either of this respondent or the matter involved, to make any such order, or to require this respondent to answer thereto, because he says that said records herein show that if respondent received said money, or any part thereof, it was before the petition in bankruptcy was filed, and in that event neither the court nor the referee in bankruptcy can proceed against this respondent as herein attempted by order or rule to pay: and he hereby asks that this be taken as his response herein, and that said order be set aside and vacated. He says that at no time since the filing of the petition in bankruptcy herein has he received said $14,435.95, or any part thereof. Defendant, for further response herein, says that he ought not to be required to respond as to the matters herein set forth, or any of them, because he says that within the last few days he has been indicted in the district court of the United States for the district of Kentucky, sitting at Louisville, charged with the offense of receiving said $14,435.95 after the filing of the petition in bankruptcy against E. B. Nugent, and also with retaining same, and aiding and abetting in the retention thereof, both after the filing of said petition and the adjudging of said Nugent a bankrupt thereunder, for the purpose of defeating the bankrupt law. He says that said indictment is still pending, undetermined, and his response herein in regard to these matters would tend to criminate him thereunder. He says that this indictment grew out of the transactions upon which this litigation is based, and said indictment is based upon the identical transactions that he is now called upon to respond in reference thereto, and that he is now in jail under said charge, awaiting trial, and to compel him to respond herein would deprive him of the constitutional right guarantied to him by the constitution: that is, that he shall not be compelled to give evidence as against himself. And now, having fully responded herein, he prays that the order herein be set aside and vacated, and that he be dismissed from further response thereto.

"W. T. Nugent."

Upon a hearing thereof, the referee adjudged that the response was insufficient, and no further response was tendered, whereupon the rule was made absolute, and on October 16th the respondent was ordered to pay to the trustee, at 9:30 o'clock a. m. of the next day, the sum of $14,233.45, being the amount in his hands in the manner stated, and belonging to the bankrupt's estate. The respondent having failed to obey this order, or to pay any part of the money, the referee adjudged him to be in contempt, and recommended that the court impose a punishment therefor. The court finds the facts of the case to be as above stated, with the addition that the entire amount ($14,233.45) is the property of the bankrupt's estate alone; that it had been taken possession of and was held by W. T. Nugent as the agent only of his father up to and at·the time of the adjudication; and that the respondent never claimed title to any part of it, nor made any claim of right to it by reason of any attempted transfer of title or ownership therein to him at any time, either in fraud of the bankrupt's creditors or otherwise, nor has

he ever claimed to have converted any part of it to his own use, nor in any wise to have claimed it adversely to the bankrupt or the trustee. The court is asked to review the said orders of the referee of October 16, 1900, which required the payment of the money by respondent, and which adjudged him to be in contempt for his failure to do it.

The response of W. T. Nugent, as will be seen from reading it, is put entirely upon two grounds. The first is that the court and referee are without jurisdiction in the premises, and the second is that respondent had been recently indicted for certain offenses against the laws of the United States, growing out of the transaction respecting the money. Inasmuch as any indictment in the premises must be presumed (in the absence of copies, which respondent has failed to produce) to be under section 29 of the bankrupt act, and as no offense there provided for is at all similar to the one which the referee held to be a contempt, viz. the failure to obey the orders indicated, that part of the response which refers to the indictment is so manifestly insufficient as to require no further treatment. It is not claimed by respondent that he is indicted for disobeying that order. The important inquiry is, had the referee power to make the order requiring payment by respondent of the moneys? If not, the matter is at an end; but, if he had the power, then it follows, almost as matter of course, that the refusal to obey the order was a contempt, which the court may punish under the express provisions of the act. Those provisions are found in section 2 of the act, and give to the courts of bankruptcy power (6) "to bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy"; (7) "to cause the estates of bankrupts to be collected, reduced to money and distributed, and to determine controversies in relation thereto"; (13) "to enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or imprisonment or fine and imprisonment"; (15) "to make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act"; and (16) "to punish persons for contempts committed before referees." Section 41 provides that "a person shall not, in proceedings before a referee, disobey or resist any lawful order, process, or writ."

It is contended that, as the money was delivered to respondent before the petition in bankruptcy was filed, as matter of law he must be regarded as an adverse holder of it, and that the only remedy left in such a case is a civil action under section 23 of the act, of which this court would have no jurisdiction; and authorities are cited to show that, where there was an adverse possession of money or property, it was held that such a proceeding only, and not a summary one, was available, and doubtless those authorities correctly state the law applicable to such a condition of fact. But that does not seem to be this case. It is contended that the money in this case must be regarded as having been converted by the son to his own use before the bankruptcy proceedings were instituted, and

that there was consequently an adverse possession; but this would require the court to do what the bankrupt did not venture to do in his response, notwithstanding the fact that there is nothing in section 29 which makes it an offense to have received any money or property of the bankrupt before the filing of the petition. This contention of counsel, based upon no fact stated in the response, would therefore require the court to find, as matter of fact, that the respondent had converted this money to his own use, and to have had an adverse right to it, as against his father, before 5 o'clock p. m. February 19, 1900. There is absolutely nothing, in the record to warrant or to support such a conclusion, and the court declines to reach it. There is no pretense that he held it, up to that time, nor up to the time of adjudication, otherwise than as a mere agent and custodian; nor is there any proof which would warrant the conclusion that this money, or any part of it, was, before the hour of filing the petition, transferred to respondent in fraud of the creditors, nor, indeed, is there any claim in the response to that effect. The response is wholly silent as to whether the respondent has squandered the money, or still has it on hand. This silence is, per se, a forcible suggestion that it is still in his possession. If, as it clearly appears to the court was the fact, there was nothing but an agency upon respondent's part to receive this money as custodian thereof for his father, and if, as it also appears, this was in fact done, then the property, in legal contemplation, remained in the bankrupt's possession at the time of filing the petition, and also at the time of the adjudication. If this be so, then the respondent thereafter held it for the benefit of the trustee, who was substituted to the position of principal to this agent, and for whose benefit the agent thereafter held it; and it was the plain and manifest duty of the respondent, under these circumstances, and having regard to that relation, to pay it over to the trustee, instead of running off with it. Under the powers conferred upon the referee by the bankrupt act, and in his efforts to reduce to cash and administer the assets of the bankrupt, it seems to me clear that after bringing the respondent before the court by service of the rule, and in this way probably making him a party to the proceedings, which are meant to be quite informal, the referee had the power to order this custodian of this money belonging to this bankrupt's estate to deliver the same to the trustee, to the end that it might be administered in due course. This was done, in a summary way, it is true, but not until respondent was duly served with the process applicable to such a proceeding, and not until he had responded and virtually admitted the possession of the money, which, after adjudication, was practically in the custody of the law. It is probably as correct to state of proceedings under the present law, as it was to state of them under the act of 1867, that the filing of the petition in bankruptcy is a caveat to all the world, and in effect an attachment and injunction. Bank v. Sherman, 101 U. S. 406, 25 L. Ed. 866. Under section 70 of the present act, the title of the trustee relates back to the date of adjudication, with certain specified exceptions, the only pertinent one of which appears to be that of "property transferred by the bank-

rupt in fraud of his creditors." There is no claim made in the response that the money in the respondent's hands was ever so transferred to him. Indeed, we have the simple case of a bailee of the bankrupt, as such, holding the custody of certain money which came to his hands in the manner stated, and which he has been ordered to pay or deliver to the trustee, the officer of the court, who, by operation of law, has been substituted to all the rights of the bankrupt in that property. The court, in its opinion, has jurisdiction to enforce obedience to that order, although the respondent is not the bankrupt, but "another person," when, as appears to be the case here, he is properly before the court upon the rule and his response thereto. The case is somewhat similar to a proceeding in rem, and the court is but dealing with property which, under the facts of the case, is potentially in the custody of the law. The opinion of Judge Wheeler in the case In re Brooks (D. C.) 91 Fed. 508, is very satisfactory upon the question of jurisdiction. Light is also thrown upon it by the opinion in White v. Schloerb, 178 U. S. 547, 548, 20 Sup. Ct. 1007, 44 L. Ed. 1183. There could easily and safely have been a denial by respondent of the charge of receiving or concealing the money, or, failing in making a denial available for his purposes, there could have been a payment of the money into court. Neither was done. Any dilemma in which the respondent may find himself involved by reason of the indictment is of his own creation. If the suggestion—or, rather, hint—of its existence was made for the mere purpose of avoiding or evading the duty of making in his response a direct statement of his reasons for not delivering up the money in his hands, it is well that the court is not bound, without either statement or proof, to assume that the difficulty is real, and not affected, and offered merely with the hope of its being available as a convenient and possibly ingenious mode of avoiding either a frank statement of the facts, or else a denial of what is alleged against him. In the absence of either of these, the claim of danger of self-incrimination seems, for the most part, to be a mere abstraction, and in no wise a real difficulty. To the extent of being abstract or not well founded, it is not a proper or sufficient barrier behind which to hide this large sum from the court and the creditors. While the respondent may prudently and rightfully choose not to criminate himself by any statement in his pleading, there was urgent occasion to show facts of exculpation, and, in the nature of things, this could hardly criminate him; but the vice of the response is that it does not do it, nor does the respondent see fit to plead in such a way as to show that he is not guilty, although such a pleading could not possibly criminate him. He substantially rests the case upon a denial of jurisdiction in the court, and not upon any defense to the merits.

Our conclusion is that, upon the grounds indicated, this case appears to call in the most vehement manner upon the court to exert all its powers to get this large sum of money out of the hands of this unfaithful bailee for the benefit of the bankrupt's creditors. Over $14,000 which manifestly belongs to the creditors, and not in any sense to the respondent, has been received by the latter in the

manner indicated, and is held by him under circumstances which present no appeal to the sympathies of any right-thinking man; and if, under the facts shown, his retention of this fund may be allowed, and if such retention is sanctioned by the court, and if it be so easy by this species of jugglery between a bankrupt father and his son,— if that be so easy of accomplishment,—the rights of creditors in such cases may be defeated with an ease and completeness that would make involuntary proceedings in bankruptcy a somewhat laughable mockery. This characteristic will not be willingly impressed upon such proceedings by this court.

Of the contention of respondent that he cannot respond freely, lest he criminate himself, it may be further remarked that there was the easiest possible way to avoid this, by paying the money into court, and there making any claim to it that he had, so that the questions could be settled here. There has been no effort made either to pay the money, or to state any fact to enable the court to decide whether the respondent has any sort of claim to it, or any reason to present why he should not place it where the creditors who are entitled to it may get it.

To sum up the whole matter: The respondent has the money in his hands as agent or bailee only. His possession is that of his principal. His principal was his father, up to a certain stage of these proceedings; but whether up to the filing of the petition, or up to the adjudication, we need not stop to inquire, as it is immaterial in this case. At one or the other of those times his principal, by operation of law, was changed, and an officer of this court was substituted for his father. That change in no way lessened the duty of paying the money to the proper principal upon notice and demand. After the change, however, the money was potentially in the custody of the law in these proceedings, and subject to the orders of the court. The rule and its service constituted sufficient notice and demand. The order made was that the respondent should pay the money to the proper officer. Disobedience of that order is made punishable as a contempt by the express provisions of the act. The court, therefore, has jurisdiction of the person and of the subject-matter. The rulings of the referee appear to be right, and are approved and confirmed, and his recommendation as to punishing the respondent for the contempt adjudged will be acted upon with appropriate vigor. Under the authority of section 725, Rev. St., and the cases of Tinsley v. Anderson, 171 U. S. 107, 18 Sup. Ct. 805, 43 L. Ed. 91, and In re Swan, 150 U. S. 637, 14 Sup. Ct. 225, 37 L. Ed. 1207, the judgment of the court, in the exercise of its statutory discretion, will be that the respondent, W. T. Nugent, for his contempt aforesaid, be imprisoned in the county jail until he shall deliver to Arthur E. Mueller, the trustee, said sum of $14,233.45; and the court will reserve the right to suspend or set aside this judgment and sentence upon the delivery and payment of the money as ordered.