# MOSS *v.* UNITED STATES.

MOSS *v.* UNITED STATES.

Courts of the District of Columbia; Contempt of Court; Jurisdiction.

1. The Constitution of the United States having provided by art. 3, § 1, that Congress shall have the power to ordain and establish inferior courts to the United States Supreme Court and by art. 1, § 8, that Congress shall exercise exclusive legislation over the District of Columbia, the courts established in this District, while creations of Congress, are authorized by the Constitution and are therefore courts of the United States for the administration of the laws of the United States; and therefore, the supreme court of the District of Columbia is a court of the United States within the meaning of U. S. Rev. Stat. § 725, U. S. Comp. Stat. 1901, p. 583, conferring upon the courts of the United States the power to punish by fine or imprisonment, at the discretion of the court, contempts of their authority.
2. The provision of D. C. Code, § 61, that the supreme court of this District shall possess the same powers and exercise the same jurisdiction as the circuit and district courts of the United States and shall be deemed a court of the United States, and the provision of D. C.

Code, § 1, that all general acts of Congress not locally inapplicable·
in the District of Columbia shall remain in force in said District, are·
nothing more than general legislative declarations in affirmance of pre-
existing decisions upon the subject.

**3.** As U. S. Rev. Stat. § 725, U. S. Comp. Stat. 1901, p. 583, limits the·
power of the courts of the United States to punish contempt of their·
authority to fine or imprisonment, and as the supreme court ꞌof the
District of Columbia is a court of the United States, a sentence of
that court that imposes both fine and imprisonment upon a party
found guilty of contempt, cannot be executed as to both, and if he·
pays the fine imposed he is entitled to be discharged from custody.

Nos. 1386 and 1387. Submitted March 10, 1904. Decided May, 3, 1904.

HEARING on two appeals,—one from an order of the Supreme·
Court of the District of Columbia adjudging the appellant
guilty of contempt of court, and the other from an order of that
court overruling his demurrer to the return to a writ of habeas.
corpus and remanding him to prison.                   *Reversed.*

The COURT in the opinion stated the case as follows :

There are two appeals, relating to the same subject-matter,.
brought into this court by the appellant, from decisions of the
supreme court of the District of Columbia, which were argued
together as one case, and which will be considered and disposed
of in one opinion.

The first of these appeals was taken from an order adjudging
the appellant guilty of a contempt of court, and the other from
an order of the court overruling a demurrer to the return of a
writ of habeas corpus, and remanding the appellant to prison.

The appellant was adjudged guilty of contempt upon proof
that he had attempted to influence a jury impaneled in a murder·
case, by addressing them, as they passed along the street in
charge of an officer of the court, by declaring in their hearing,
"Not guilty, gentlemen, not guilty,"—the jury, at that time,.
having under consideration the question of the guilt or inno-
cence of the party accused.

Upon hearing and conviction of the appellant upon the charge·

of contempt, he was sentenced by the court to ten days' imprisonment in the jail, and to pay a fine of $25 and $5 costs, and, in default, of payment of fine and costs, to stand further committed to said jail until those sums be paid. Upon warrant of commitment issued the appellant was accordingly taken to and imprisoned in jail; and thereafter he paid the fine and costs, and then petitioned the supreme court of the District of Columbia for the writ of habeas corpus, upon the allegation that he was unlawfully imprisoned, and praying that he be discharged. The writ was issued, and return thereto made to the same justice by whom conviction and commitment were made. In the return the cause of the detention of the appellant was stated, together with a copy of the warrant of commitment made part of the return.

The appellant entered a demurrer to the return, upon the ground that there was no power or jurisdiction in the court to convict and sentence the appellant as for a contempt of court; or if there was jurisdiction to convict and sentence the appellant, there was an excess of jurisdiction exercised in the sentence imposed.

There are two questions presented on these appeals necessary to be decided by this court: (1) Whether the supreme court of this district is a court of the United States within the meaning and contemplation of § 725 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 583, and whether said section properly applies to said court as to all other courts of the United States; and if so, (2), whether there was an excess of authority exercised by the court below in imposing the sentence on the appellant, in view of said § 725, U. S. Comp. Stat. 1901, p. 583, such as rendered the sentence void in whole or in part.

*Mr. John C. Gittings, Mr. Wilton J. Lambert,* and *Mr. D. W. Baker* for the appellant.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, *Mr. Hugh T. Taggart* and *Mr. Peyton Gordon,* Assistant Attorneys, for the United States.

1. At common law the proceedings would be valid, and if, notwithstanding § 725 of the Revised Statutes of the United States, that law may be invoked in support of the sentence, as we submit it may, the sentence must stand. Every superior court of record being at common law the sole judge of contempts against its authority and dignity, it naturally results that the judgment of every such court in cases of contempt is, at common law, final and conclusive and not reviewable by any other tribunal, either on writ of error or appeal, unless specifically authorized by statute. Rapalje, Contempt, § 141; *New Orleans* v. *Steamship Co.* 20 Wall. 387; *Williamson's Case,* 26 Pa. 18.

2. By the first section of the act of Congress of February 27, 1801 (2 Stat. at L. 103), it was provided that the laws of the State of Maryland, as they then existed, should continue in force in that part of the District of Columbia which was ceded by that State to the United States. Under this legislation the Supreme Court of the United States has held in many cases that the common law continued to be in force in the present limits of the District of Columbia. By the act of Congress approved March 3, 1901, (D. C. Code) it is expressly and in terms enacted that the common law shall remain in force in this District, except in so far as the same may be inconsistent with or replaced by some provision of the Code. (See also § 1640 of the repeal provisions of the act.) The only provisions of the Code dealing specifically with the matter of contempts are: 1. Section 1113, which authorizes commitment on failure to comply with a decree. 2. Section 48, which gives the police court power to punish them; 3. Section 103, which makes any person liable to attachment and punishment for contempt who secretes an infant to prevent service of process; and, 4. Section 1146, which makes an officer or other person liable to attachment and punishment for contempt who neglects or refuses to make return to a writ of habeas corpus.

The contention in behalf of appellants must necessarily be either: (1) That the supreme court of the District of Columbia is a "court of the United States," within the meaning of § 725,

Revised Statutes of the United States, and the acts of 1789 and 1831, from which that section is made up, and that said section applies to the District *proprio vigore;* or (2) that said § 725 only becomes operative in the District by virtue of that provision of the first section of the Code which continues in force in the District "all general acts of Congress not locally inapplicable in the District of Columbia" which were in force at the date of its passage.

It is obvious that the phrase "courts of the United States," as used in the act of 1789, passed "to establish the judicial courts of the United States," could have no possible relation to the circuit court of the District of Columbia, established by the act of 1801, or to its successor, the supreme court of the District of Columbia, established by the act of 1863, and likewise that the phrase as used in the act of 1831 had relation only to courts forming part of the Federal judicial system.

The "courts of the United States" are those in which the judicial power of the United States is vested, and can be those only created under article 3 of the Constitution.

It is not within the power of Congress to make "courts of the United States" out of courts created by it under the authority given by other parts of the instrument. Hence the provision of the Code which declares that the supreme court of the District of Columbia "shall be deemed a court of the United States" is without significance in the case at bar.

The decisions of the Supreme Court of the United States draw the distinction between the Federal courts established under article 3 of the Constitution and the courts established under § 8 of article 1 of the Constitution, conferring upon Congress the power of exclusive legislation over such district as might become the seat of government, and the courts established by Congress for the territories under article 4, conferring power upon it to make all needful rules and regulations respecting the territory belonging to the United States. The courts established under article 3 of the Constitution are treated as courts of the United States proper, while the others are designated as legislative courts. *McAllister* v. *United States,* 141 U. S. 175. In

this case the Supreme Court reviews its previous decisions bearing upon the question, and the opinion is to the effect that the phrase "courts of the United States," as used in U. S. Rev. Stat. § 725, is confined to the courts forming part of the Federal system, of which the supreme court of the District is not one. The alternative proposition, that § 725 falls within the category of "general acts of Congress not locally inapplicable to the District," is equally unfounded. In the case of *Hovey* v. *Elliott,* 167 U. S. 409, the precise point here involved was argued on behalf of the appellant, but the court in disposing of the case found it unnecessary to decide it.

3. The commitment is not invalid because the details of the act constituting the contempt of which appellant was adjudged guilty are not fully set forth and shown therein. The fact that appellant was adjudged guilty of a contempt clearly appears from the commitment, and that is sufficient. *Tolman* v. *Leonard,* 6 App. D. C. 224; *Ex parte Summers,* 5 Ired. 153; *Ex parte Fernandez,* 10 C. B. 25; *Burdette* v. *Abbott,* 14 East, 152.

4. If U. S. Rev. Stat. § 725, does not *proprio vigore* apply to courts created by Congress for the District of Columbia, and if said section does not fall within the category of "general acts of Congress not locally inapplicable" in the District, the jurisdiction of the court below to impose the sentence is clear at common law. If, on the other hand, U. S. Rev. Stat. § 725, was binding upon the court below, its jurisdiction was only exceeded in the imposition of sentence, and the cases should be remanded to it for correction in this respect. The case of *Ex parte Lange,* 18 Wall. 163, is distinguishable from the case at bar in this, that in the *Lange Case* the court exhausted its authority in respect of the imposition of the maximum of fine and imprisonment. *Re Bonner,* 151 U. S. 242; *Medley, Petitioner,* 134 U. S. 160.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. There is no statutory provision in the Code of laws enacted by Congress for this District applicable to contempts of

court generally, or to this particular class of contempts. But it has heretofore been supposed that the act of Congress of March 2, 1831, § 1 (4 Stat. at L. 487, chap. 99), now embodied in § 725 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 583, did apply to the courts of general jurisdiction in this District. *United States* v. *Emerson,* 4 Cranch C. C. 188, Fed. Cas. No. 15,050.

Following § 724 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 583, which confers upon the courts of the United States power to order the production of books and writings in the trial of actions at law, § 725, U. S. Comp. Stat. 1901, p. 583, contains the following provision in relation to contempts in said courts:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court contempts of their authority: Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts." This section embodies in it a clause taken from § 17 of the judiciary act of 1789, which declares that said courts shall have power to punish by fine or imprisonment, at the discretion of said courts, all contempts, etc.

Now it is contended on the part of the United States, that the supreme court of the District of Columbia is not a court of the United States, within the meaning of § 725 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 583, and therefore the said section does not apply in this case. And this presents a question that has often been presented and discussed, and, as we think, definitely decided by the highest authority: But why is the supreme court of this District not a court of the United States, within the meaning of the terms,

"courts of the United States," as employed in the act of 1831, and § 725 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 583 ? It is said that the judicial power imparted to it is not a part of the judicial power delegated to the United States by art. 3, § 1, of the Constitution. But that was but a general delegation of judicial power, and should be construed in connection with all other delegated powers confided to the United States government by the Constitution. That provision of the Constitution which declares (art. 1, § 8) that Congress shall exercise exclusive legislation, in all cases whatsoever, over such district (not exceeding, etc.) by cession of particular States, and the acceptance of Congress as shall become the seat of the Government of the United States, vests in Congress plenary power over this District for all purposes. Such grant of power necessarily implies the power of Congress to ordain and establish such courts as should be found necessary for the orderly and proper government of the District and the people residing therein; the cession being made and accepted by Congress for the United States as a permanent seat of government organized under the Constitution. And though the courts of the District are created and established by act of Congress, the power for such creation and establishment is no less derived from the Constitution than the power under art. 3, § 1, of the Constitution, to ordain and establish inferior courts to the Supreme Court of the United States. All courts thus established by Congress, while the creations of Congress, are authorized by the Constitution, and are therefore courts of the United States for the administration of the laws of the United States. The courts of general jurisdiction of the District of Columbia are certainly not mere municipal courts; and they have always been distinguished from mere territorial courts, created for a temporary purpose, and the judges of which may be appointed for a limited time, subject to removal by the President. Indeed, the courts of general jurisdiction of this District have been treated and regarded, from the time of their first creation and establishment down to the present time, as courts of the United States; and it is difficult to perceive how they could be otherwise designated. They

have been so declared by the Supreme Court of the United States upon more than one occasion. *Embry* v. *Palmer,* 107 U. S. 3, 9, 10, 27 L. ed. 346, 348, 349, 2 Sup. Ct. Rep. 25 ; *Phillips* v. *Negley,* 117 U. S. 665, 674, 675, 29 L. ed. 1013, 1015, 6 Sup. Ct. Rep. 901. And such being the nature and status of the supreme court of this District, why should not § 725 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 583, apply to cases of contempts occurring therein, as well as in other courts of the United States? The provisions of the statute embodied in that section were intended to define and regulate the subject of contempts in all the courts of the United States generally; and there is no good reason why such provisions should not apply to contempts occurring in the courts of this District as well as in the other courts of the United States.

In the case of *Ex parte Robinson,* 19 Wall. 505, 22 L. ed. 205, where an attorney had been disbarred for a contempt of court, and he applied for a mandamus to be restored, the question of the application of the act of March 2, 1831, was very fully considered by the Supreme Court,—the opinion being delivered by Mr. Justice Field. In that case it was said by the court : "The power to punish for contempts is inherent in all courts : its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power. But the power has been limited and defined by the act of Congress of March 2, 1831. The act, in terms, applies to all courts; whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may perhaps be a matter of doubt. But that it applies to the circuit and district courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which

summary punishment for contempts may be inflicted." And in another part of the opinion, the court said: "The law happily prescribes the punishment which the court can impose for contempts. The 17th section of the judiciary act of 1789 declares that the court shall have power to punish contempts of their authority in any cause or hearing before them, by fine or imprisonment, at their discretion. The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment. The judgment of the court disbarring the petitioner, treated as a punishment for a contempt, was, therefore, unauthorized and void." .

In addition to the foregoing consideration and authority for maintaining that the supreme court of this District is a court of the United States, Congress, in adopting the code of laws for this District, by § 61 thereof, has declared that the supreme court of this District "shall possess the same powers and exercise the same jurisdiction as the circuit and district courts of the United States, and shall be deemed a court of the United States;" and, by § 1 of the Code, it is declared that "all general acts of Congress not locally inapplicable in the District of Columbia, * * * shall remain in force" in said District. These, however, are nothing more than general legislative declarations in affirmance of pre-existing decisions upon the subject. It had been held that § 15 of the judiciary act of 1789, now embodied in § 724 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 583, relating to the power to compel the production of books and writings in actions at law, was in force and applied in actions brought in the courts of this District. *Maye* v. *Carberry,* 2 Cranch C. C. 336, Fed. Cas. No. 9,339; *Bank of United States* v. *Kurtz,* 2 Cranch C. C. 342, Fed. Cas. No. 920; *Thompson* v. *Selden,* 20 How. 194, 15 L. ed. 1001. And so in regard to § 32 of the judiciary act of 1789, relating to amendments of pleadings, it has been held that that section was in force and applied in the courts of this District. *Garland* v. *Davis,* 4 How. 131, 11 L. ed. 907. And more recently, it has been held by the Supreme Court that the general

act of Congress, relating to the competency of parties as witnesses, applied in the courts of this District as it did in all the other courts of the United States. *Page* v. *Burnstine,* 120 U. S. 664, 26 L. ed. 268.

We are clearly of opinion that the supreme court of the District of Columbia is a court of the United States, and that § 725 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 583, applies to contempts of court committed therein, if of the class of contempts designated in said section; and that the punishment for such contempts can only be such as is prescribed by said section of the Revised Statutes.

2. The remaining question requires but little to be said in respect to the sentence that was imposed' upon the appellant, from which he seeks to be discharged. It is conceded by counsel for the United States that if § 725 of the Revised Statutes U. S., Comp. Stat. 1901, p. 583, does apply to the case the sentence that was passed upon conviction was erroneous, and therefore must be reversed. It is, however, insisted, on the part of the appellant, that the sentence was not only erroneous but was absolutely void and without effect. This contention is certainly well founded as to that part of the sentence which imposed a period of imprisonment upon the appellant in addition to fine and costs. Either fine *or* imprisonment, in the discretion of the court, could be imposed, but not both. The section of the statute expressly limits the power of the court to either fine *or* imprisonment, in its discretion; and the settled construction is that a sentence that imposes both fine and imprisonment can not be executed as to both. In this case it is conceded that the fine and costs have been paid, and the amounts accepted on behalf of the United States; and therefore the sentence has been executed so far as it can be legally executed, and as to the imprisonment imposed the sentence is void. In *Ex parte Lange,* 18 Wall. 163, 21 L. ed. 872, it was held that a judgment of a court that had been executed so far as to be in full satisfaction of one of the alternative penalties of the law, put an end to the power of the court over the offense. Upon payment of the fine and costs the appellant was entitled to his discharge. After

that it was unlawful to detain him.   *Re Swan,* 150 U. S. 652, 37 L. ed. 1211, 14 Sup. Ct. Rep. 225.

It follows that the sentence, and also the order overruling the demurrer to the return to the writ of habeas corpus and remanding the appellant to jail, must be reversed, and the appellant be discharged; and it is so ordered.

Sentence, and order overruling demurrer, *reversed, and appellant discharged.*