### O'BRIEN v. McCLAUGHRY, Warden.

(Circuit Court of Appeals, Eighth Circuit. December 2, 1913.)

No. 3938.

1. CRIMINAL LAW (§ 1218*)—LEGALITY OF SENTENCE—IMPRISONMENT IN LEAVENWORTH PENITENTIARY.

The provision of Act March 3, 1891, c. 529, 26 Stat. 839 (U. S. Comp. St. 1901, p. 3725), authorizing the establishment of three government prisons "for the confinement of all persons convicted of any crime whose term of imprisonment is one year or more at hard labor," so far as it limited the use of such prisons to cases where the sentence included hard labor was repealed as to the prison at Leavenworth by Act March 2, 1895, c. 189, 28 Stat. 957 (U. S. Comp. St. 1901, p. 3728), directing the transfer of the military prison at Ft. Leavenworth to the Department of Justice to be used for the confinement of prisoners convicted in the United States courts and sentenced to imprisonment in a penitentiary.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3320–3328; Dec. Dig. § 1218.*]

2. CRIMINAL LAW (§ 1216*)—CONTINUOUS OFFENSE—BURGLARY AND LARCENY.

A defendant cannot be convicted of breaking and entering a post office with intent to commit larceny, in violation of Cr. Code, § 190 (Act March 4, 1909, c. 321, 35 Stat. 1124 [U. S. Comp. St. Supp. 1911, p. 1644]), and also

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of committing the larceny therein, where both acts were committed at the same time and as a part of a continuous transaction.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3310–3319; Dec. Dig. § 1216.*]

8. CRIMINAL LAW (§ 1216*) — PUNISHMENT — EXCESSIVE SENTENCE — RIGHT TO DISCHARGE.

A prisoner confined in a federal penitentiary under a sentence imposing two terms on different counts of the indictment to be served successively, the second of which terms is illegal, is entitled to be discharged on habeas corpus from such part of the sentence, although his first term has not expired, because of the effect which the illegal part of the sentence has on his right to petition for parole after he has "served one-third of the total of the term or terms for which he was sentenced," under Act June 25, 1910, c. 387, § 1, 36 Stat. 819 (U. S. Comp. St. Supp. 1911, p. 1702).

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3310–3319; Dec. Dig. § 1216.*]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Habeas corpus by James E. O'Brien, on petition of T. W. Bell, against Robert W. McClaughry, Warden of the United States Penitentiary at Leavenworth, Kan. From an order denying the writ, petitioner appeals. Modified.

Turner W. Bell, of Leavenworth, Kan., for appellant.

H. J. Bone, U. S. Atty., and Charles S. Briggs and A. M. Harvey, Asst. U. S. Attys., all of Topeka, Kan., for appellee.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. The petitioner, James E. O'Brien, and others were indicted in the District Court of the United States for the District of South Dakota. The indictment was in two counts. In the first they were charged with breaking into the post office in the town of Stockholm with intent to commit larceny of the property of the United States; and in the second they were charged with larceny of the goods of the United States, within said post office, of the value of $58.80. To the indictment the defendant O'Brien pleaded guilty, and the court on May 9, 1911, sentenced him to five years in the Leavenworth penitentiary upon the first count and three years at the same place on the second count to commence upon the conclusion of the former sentence. He was accordingly taken to the penitentiary at Leavenworth on May 15, 1911.

This was a proceeding in habeas corpus and was instituted in the United States District Court of Kansas against the warden of the Leavenworth penitentiary. It resulted in an order for the remanding of the petitioner and he appeals.

The indictment to which the petitioner pleaded guilty charged the commission of the offense on the 22d day of December, 1910, and was returned to the District Court on May 6, 1911.

The Penal Code was enacted March 4, 1909 (Act March 4, 1909, c. 321, 35 Stat. 1088 [U. S. Comp. St. Supp. 1911, p. 1588]), and by

its terms provided it should take effect and be in force on and after January 1, 1910. The case is therefore governed by sections 190 and 192 of the Penal Code. The petition seems to have been filed upon the supposition that the petitioner was convicted under Revised Statutes 5475 and 5478 (U. S. Comp. St. 1901, pp. 3694, 3696). Both of those sections required the sentence to be at hard labor, but the sections of the Penal Code, in existence when the offense was committed, the parties pleaded guilty and were sentenced, contained no such provision. True, section 338 of the Penal Code provides:

"The omission of the words 'hard labor' from the provisions prescribing the punishment in the various sections of this act, shall not be construed as depriving the court of the power to impose hard labor as a part of the punishment, in any case where such power now exists."

This simply gives the court the power to impose hard labor as a part of the punishment but does not make it obligatory. The question. is therefore not involved as to what would be the effect if the court had sentenced the defendant to a punishment without specifying hard labor when that was an obligatory part of the statute on the subject.

[1] It is contended by the petitioner that he is illegally detained at the penitentiary at Leavenworth. He relies upon the fact that the first section of the act of Congress, which provides for creating this prison (Act March 3, 1891, c. 529, 26 Stats. 839 [U. S. Comp. St. 1901, p. 3725]), provides for its erection:

"For the confinement of all persons convicted of any crime whose term of imprisonment is one year or more at hard labor."

And it is insisted that, as the petitioner was not sentenced at hard labor, he could not be lawfully detained at the Leavenworth institution.

It was formerly the practice to use the state penitentiaries and county jails as places wherein to punish the violation of federal statutes. Numerous defects existed under this system because of varying rules and conditions in the different penitentiaries, and for other reasons, and on March 3, 1891, Congress passed a law that the Attorney General and Secretary of the Interior were authorized and directed to purchase three sites, two east of the Rocky Mountains and one west, and cause to be erected thereon three prisons "for the confinement of all persons convicted of any crime whose term of imprisonment is one year or more at hard labor." It made an appropriation for the fitting of work shops, provided that the prisoners be employed exclusively in the manufacture of supplies for the government, such as can be be manufactured without the use of machinery, prohibited the prisoners working outside the prison inclosure, vested the control and management of such prisons in the Attorney General, authorized him to make rules for the government of the officers of the prisons and the prisoners as he might deem proper and necessary.

Four years later, on March 2, 1895, in the sundry civil bill (Act March 2, 1895, c. 189, 28 Stat. 957 [U. S. Comp. St. 1901, p. 3728]), the following provision was passed:

"The military prison at Fort Leavenworth, Kansas, including all the buildings, grounds, and other property connected therewith, is hereby transferred from the Department of War to the Department of Justice, to be known as

the United States penitentiary, and to be used for the confinement of persons convicted in the United States courts of crimes against the United States and sentenced to imprisonment in a penitentiary, or convicted by courts-martial of offenses now punishable by confinement in a penitentiary and sentenced to terms of imprisonment of more than one year; and the Attorney General is hereby directed to transfer to the said United States penitentiary such persons now undergoing sentences of confinement, imposed by the United States courts, in state prisons and penitentiaries, as can be conveniently accommodated at the same penitentiary: Provided, That the said United States penitentiary shall be carried on in accordance with the provisions of sections four, five, six, seven, eight, and nine of the act approved March third, eighteen hundred and ninety-one."

The military prison at Ft. Leavenworth had been erected at a time when it was advocated by the War Department and believed by Congress that such prison should exist. Subsequently the army officers became advocates of post prisons. They did not believe that the concentration of large numbers of military prisoners was desirable and with the approval of Congress began the erection of numerous prisons at the army posts of the United States. It was while this situation existed that this last law of Congress was passed. Subsequently the officers of the army changed their minds upon the subject and concluded the existence of a large number of prisoners at each army post was demoralizing to the army, and that the prisoners should be concentrated in military prisons. But for the time being the act of Congress in question made of the old military prison establishment a civil penitentiary, and it will be observed that the language of that law did not provide that the prisoners must have been sentenced to hard labor as did section 1 of the act of 1891. That act did provide that the penitentiary should be carried on in accordance with the provisions of sections 4, 5, 6, 7, 8, and 9 of the act approved March 3, 1891, but said nothing about limiting the prisoners to those described in section 1 of the act of 1891. It is true that, after the War Department had changed its opinion as to the wisdom of post prisons, Congress passed the act of June 10, 1896 (29 Stats. 380, c. 400 [U. S. Comp. St. 1901, p. 3729]), by which it provided for the selection of the site of the military reservation at Leavenworth for a civil penitentiary and provided that when it should be erected the buildings and grounds that had been transferred to the Department of Justice by the act of Congress approved March 2, 1895, should be restored to the control of the said Department of War, but the new civil penitentiary was not required to be for persons sentenced to hard labor, and this court is of the opinion that, if the provisions in the act of 1891 for the erection of three prisons "for the confinement of all persons convicted of any crime, whose term of imprisonment is one year or more at hard labor," should still be in existence as to the Atlanta penitentiary and the one at McNeill's Island, upon which question no opinion is ventured, it was repealed as to the Leavenworth penitentiary by the sundry civil bill of March 2, 1895, and has never been re-enacted. The sentence, therefore, to the penitentiary at Leavenworth without mentioning hard labor is not illegal.

[2] A question which is not specifically mentioned in the briefs, but was referred to in the oral argument, appears, however, upon the record.

In Munson v. McClaughry, 198 Fed. 72, 117 C. C. A. 180, there was before this court a case on all fours with this in many respects. There the prisoner was sentenced under the first count of the indictment for breaking into a post office with intent to commit larceny under Revised Statutes, § 5478, and under the second count of the same indictment for larceny of the property of the United States from the same building at the same time that he committed the offense of breaking into the building charged in the first count. This court held he could have been convicted of either offense but not of both; that both crimes were inspired by a single intent and that could be punished but once.

It thus clearly appears not only that the district Court of South Dakota erred, but it was expressly held by this court that it exceeded its jurisdiction by so much as its sentences exceeded the highest imprisonment imposed on either act. The sentence of the larceny charge, having been imposed at the same time with a greater sentence on the charge of breaking into the building, was void as against the petitioner.

[3] Ordinarily the law will on habeas corpus grant no relief to a prisoner under such circumstances until he has served the larger sentence imposed on the two counts, if that was within the power of the court to impose. In re Swan, 150 U. S. 637, 14 Sup. Ct. 225, 37 L. Ed. 1207. It was in effect so held by the Circuit Court of Appeals of the Sixth Circuit, when presided over by Ex-President Taft and by Judges Lurton and Day, now of the Supreme Bench. De Bara v. United States, 99 Fed. 942, 40 C. C. A. 194. While it was not so expressly stated by the court, this was doubtless in part upon the ground that, where a prisoner was held under a sentence lawfully imposed, the question as to whether he was lawfully or unlawfully held upon another sentence was a mere moot question. That case was decided in February, 1900, but on June 25, 1910, Congress passed an act to parole United States prisoners and for other purposes, which in the first section provides:

"That every prisoner who has been or may hereafter be convicted of any offense against the United States, and is confined in execution of the judgment of such conviction in any United States penitentiary or prison for a definite term or terms of over one year whose record of conduct shows he has observed the rules of such institution, and who has served one-third of the total of the term or terms for which he was sentenced, may be released on parole as hereinafter provided." Act June 25, 1910, c. 387, 36 Stat. 819 (U. S. Comp. St. Supp. 1911, p. 1702).

That law further provides for a board of parole for each prison and for application to such board for the benefit of the act.

The court is of the opinion that, aside from this statute the petitioner would be entitled to no relief whatever in this case but the District Court of South Dakota had only authority to sentence him for five years. It sentenced him for five and three years, or a total of eight years, and he was committed accordingly. This sentence was void as to the three years but valid as to the five years; yet he is being held un-

der a sentence for eight years. The parole law does not permit him to apply for its benefits except by the aggregating of the sentences against him and then taking one-third of that amount. He thus has no right under the parole law to apply for a parole until the expiration of two years and eight months, whereas he is entitled under the statute, if he had been legally sentenced, to apply at any time after one year and eight months. The latter time has elapsed; the former has not.

We cannot conceive that the second sentence against the petitioner, utterly void as it was and is, should be used to defer his right to apply for a parole (United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631), and, while fully convinced that the rule would be otherwise in the absence of the parole law, this case is reversed and remanded, with directions to the District Court to discharge the petitioner from the custody of the defendant as to the charge of larceny but to remand him upon the charge of breaking into a post office.