## HALVERSON v. UNITED STATES.
### No. 11461.

Circuit Court of Appeals, Ninth Circuit.

May 22, 1947.

Rae B. Carter, of Fresno, Cal., for appellant.

James M. Carter, U. S. Atty., Ernest A. Tolin, Howard Calverley, and Homer H. Bell, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before STEPHENS, HEALY, and ORR, Circuit Judges.

HEALY, Circuit Judge.

The Second War Powers Act of 1942, § 2(a) (2),[1] authorized the President to allocate defense material or facilities in such manner and to such extent as he might deem essential to the public interest or to promote the national defense. Section 2(a) (5) thereof provided, in part, that "any person who willfully performs any act" prohibited by the statute, or by any provision of any regulation or order thereunder, shall be punishable by a fine of not more than $10,000 or imprisonment for not more than one year or both. Pursuant to this law the Food Administration issued War Food Order 17. Section 1407.2 of this order, as it stood in December of 1944, imposed restrictions relative to raisin variety grapes. Subdivision (b) (3) thereof provided: "No person may, unless specifically authorized by the Director, purchase, accept delivery of, or use any raisins * * * for conversion into alcohol, brandy, wine, any other beverage (whether alcoholic or not), any concentrate, any syrup, or any non-food product or non-food byproduct."

Appellant was charged with substantive violations of this Act and order, and with conspiracy. He was acquitted of the conspiracy charge but was convicted of the substantive offenses. His appeal raises the question whether the substantive counts, in light of the evidence supporting them, charged a single offense or separate and distinct offenses.

The substantive counts, eight in number, alleged that on named dates between December 5 and 15, 1944, appellant, not being authorized by the Director, willfully and unlawfully accepted delivery of raisins at a certain winery at Fresno, California, for conversion into alcohol, brandy, wine, and other beverages. Each count indicated the date of the particular delivery and specified in pounds the quantity of raisins delivered.

[1] 50 U.S.C.A.Appendix, § 633.

The quantities varied from 4700 pounds to 29,840 pounds. The court imposed a sentence of 120 days' imprisonment on one of the counts and a fine on each of the others, the sum of the fines amounting in all to $2,000.

The evidence supporting these counts is ample and is not in dispute. Briefly, it shows that appellant was superintendent of a winery at Fresno, owned by B. Cribari & Sons. Two persons, Gillice and Hughes, learned of the existence of a quantity of damaged raisins in Fresno County owned by various producers, and undertook to find a way of disposing of them. Appellant was called in and said that he would accept the raisins. He was told by Gillice and Hughes that they did not know how many raisins they had, so it was suggested that they deliver the material they had the following night. A price of $265 per ton was agreed upon, out of which appellant was to receive $10 for every ton delivered. At intervals over a period of ten days raisins were delivered at the winery in different trucks by the different farmer producers, all deliveries except one being made in the nighttime. Upon acceptance of each delivery a weight tag was made up, specifying the date of the delivery, the price per ton, the total amount to be paid for the load, the name of the person selling the material, the name of the winery, a description of the commodity, the gross tare, and net weights, and the signature of the weigh master. For each load a separate certificate was made out. Appellant had a license as a weigh master, and the tags for the eight truck loads covered by the indictment were filled out and signed by him. A copy of each certificate was sent to the office of B. Cribari & Sons at San Jose, where a check was made out in favor of the person whose name appeared on the weight tag as the seller. In no case did the name of the actual seller appear on the tag, the names filled in being fictitious. Upon receipt of the several checks appellant turned them over to Gillice, who endorsed them and cashed them at a bank. Acceptance of deliveries was terminated when the winery had enough to satisfy its purpose of fortifying its wines. No releases of these raisins were applied for or received from the Food Administration.

Appellant's argument, as summarized in his brief, is that but a single offense was involved, there being but one agreement, namely, a contract to accept delivery from Gillice and Hughes of all the raisins they claimed to own. There was, appellant argues, a single impulse and a single intent. "Therefore," he says, "accepting of each installment of raisins as delivered was no more a separate offense than was the acceptance of each separate raisin as delivered."

We are not able to endorse this view. Appellant was not charged with having made an agreement or a series of agreements, but with accepting deliveries of specific quantities of the commodity at separate and distinct times. We think it plain that each acceptance was a prohibited act, violative of the statute and the quoted provision of the order. The provision, it will be recalled, was that, unless specifically authorized by the Director, no person may "purchase, accept delivery of, or use any raisins" for any of the purposes named.

Appellant cites a group of cases which he claims support his position, but with one exception (O'Brien v. McClaughry, 8 Cir., 209 F. 816) they point in the contrary direction. Decisions like O'Brien v. McClaughry appear not to express the law as now accepted in the federal jurisdiction. Cf. Morgan v. Devine, 237 U.S. 632, 640, 35 S.Ct. 712, 714, 59 L.Ed. 1153, where it is said that "the test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent and are such as are made punishable by the act of Congress." The case of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 181, 76 L.Ed. 306, is relied on for reversal, but it supports the judgment below. The Court there quoted Wharton's Criminal Law, 11th ed., § 34, and note, to the effect that "the test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. * * * If the latter, there can be but one penalty." Other cases relied on, such as Johnston v. Lagomarsino, 9 Cir., 88 F.2d 86, Parmagini v. United States, 9 Cir., 42 F.2d 721, Mitchell v. United

States, 10 Cir., 142 F.2d 480, and Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L. Ed. 1392, are readily distinguishable. Nor is appellant helped any by recourse to other "tests" that have been laid down in the cases.

Affirmed.