IN THE MATTER OF THE APPLICATION OF KENNETH SHEPLY FOR A WRIT OF HABEAS CORPUS.

No. 3544

February 10, 1949. 202 P.2d 882.

*Carville & Carville,* of Reno, for Petitioner.

*Alan Bible,* Attorney General and *Geo. P. Annand* and *Homer Mooney,* Deputy Attorneys General for Respondent.

## OPINION

By the Court, HORSEY, C. J.:

On June 17, 1948, Kenneth Shepley, then, and now, serving a sentence of life imprisonment in the Nevada State Prison, caused to be filed in this court a petition for a writ of habeas corpus. Such petition was thereupon presented to CHAS. LEE HORSEY, one of the justices of this court, who, on said 17th day of June 1948, issued such writ, commanding the Honorable Richard Sheehy, the warden of said state prison, that he have the body of

said Kenneth Sheply, by him imprisoned and detained, before this court, on the 28th day of September 1948, together with the time and cause of his detention. The time of hearing was postponed, upon stipulation of respective counsel, until the 9th day of December 1948, and on the 6th day of December 1948, Warden Sheehy caused to be filed his return, in writing, upon the writ and, on said 9th day of December, produced in this court the body of petitioner, pursuant thereto, together with the original writ, and offered to produce, upon demand, any and all originals of papers referred to in his return. The matter was briefed and extensively argued by respective counsel, on said 9th day of December 1948, and thereupon submitted to this court for its decision.

The petition and attached exhibits disclose that the petitioner, in the Ninth judicial district court, in and for the county of White Pine, on the 13th day of December 1941, upon his trial for the crime of murder, had been, by the verdict of the jury duly impaneled in such case, found guilty of murder in the first degree, and that, on the 17th day of December 1941, he was, by said court, duly adjudged guilty of the crime of murder in the first degree, and sentenced, for such crime, to be punished by imprisonment in the state prison of the State of Nevada for "the rest of his natural life." On the same date a commitment was duly issued by said Ninth judicial district court to the warden of the Nevada State Prison, commanding him to safely keep and imprison the said Kenneth Shepley in the state prison of the State of Nevada for "the rest of his natural life."

The record further discloses that subsequent to his conviction, by the verdict of the jury on the said 13th day of December 1941, of the crime of murder of the first degree, and prior to the judgment and sentence therefor, which was pronounced on the 17th day of December 1941, as aforesaid, the petitioner had been, in said Ninth judicial district court, in and for the county of White Pine, informed against, by the district attorney

of said county, charging him with the crime of grand larceny, that on the 15th day of December 1941, he had pleaded guilty thereto, and that on the 17th day of December 1941, he was adjudged guilty of said crime of grand larceny, "and that he be punished by imprisonment in the State Prison of the State of Nevada for the term of not less than two years, nor more than fourteen years, the imprisonment thereunder to commence at the expiration of the sentence of life imprisonment upon (sic) which has just previously been imposed."

On the same date, December 17, 1941, a commitment was issued by said district court, commanding the warden or officers in charge of the state prison to receive and safely keep and imprison the said Kenneth Shepley in the said state prison of the State of Nevada "for the term of not less than two years nor more than fourteen years, said sentence to follow and to commence at the expiration of the sentence of life imprisonment previously imposed."

In due time, and on or about December 17, 1941, the above-mentioned commitments were each delivered to, and received by, the said warden, and simultaneously therewith the said warden, pursuant thereto, received from the sheriff of said White Pine County the custody of the petitioner, and has ever since held him in custody.

The fourth and fifth paragraphs of the warden's return are as follows:

"4. That the undersigned now holds said petitioner pursuant to and on the authority of the commitment and judgment in said murder case first above mentioned and said judgment is now final and no appeal therefrom has been taken.

"5. That petitioner (sic) now has no authority and does not claim to have any authority to hold or imprison petitioner on the grand larceny judgment and commitment unless or until the said sentence for murder has been fully satisfied either by pardon if any or by lapse of time after commutation of sentence if any or by reason of some judgment of Court requiring his obedience.

That the undersigned does not intend to hold or imprison the petitioner for the crime of grand larceny except at the time and period following and commencing at the expiration of the sentence of life imprisonment previously imposed as aforesaid unless said sentence for grand larceny shall be set aside or modified by some pardon, commutation or judgment of Court requiring his obedience. That said judgment of conviction of grand larceny is now final and no appeal has been taken therefrom."

The grounds upon which petitioner seeks relief by habeas corpus are, in substance, as follows:

That the petitioner is unlawfully detained and restrained of his liberty upon the said commitment for the offense of grand larceny; that his commitment and the sentence and judgment for grand larceny are illegal and void; that the illegality consists in this, that prior to the judgment and commitment of petitioner for grand larceny, judgment was passed upon petitioner by said Ninth judicial district court, in and for the county of White Pine, and he was, by such court, ordered committed to the warden of the Nevada State Prison, for the crime of murder, for the "rest of his natural life," and that his commitment for grand larceny, and the judgment and sentence upon which same was predicated, imposing a sentence upon petitioner, for said offense, of not less than two nor more than fourteen years, to follow and commence at the expiration of the term of life imprisonment previously imposed by the court for the crime of murder, was excessive and unlawful; that, upon imposing the sentence of imprisonment for "the rest of his natural life," for said crime of murder in the first degree, the district court lost jurisdiction to impose any additional term of imprisonment, and that such judgment and sentence and commitment for grand larceny, providing for the detention of the petitioner, as aforesaid for the term of not less than two nor more than fourteen years, superimposed upon the judgment, sentence and commitment requiring him to suffer

imprisonment for the crime of murder in the first degree, for "the rest of his natural life," was in violation of section 6, article I of the constitution of the State of Nevada, which prohibits cruel or unusual punishments. Petitioner's attorneys have insisted, in petitioner's brief, that such punishment is at least "unusual," and have cited authorities. From the arguments of the attorneys for petitioner, upon the hearing and as presented in petitioner's brief, it appears that the principal reason for petitioner seeking relief by habeas corpus from the sentence for grand larceny, at a time when his imprisonment for that crime had not commenced, and when he was, and is, in the midst of serving his sentence of life imprisonment for the crime of murder, is because, under the rules of the board of pardons and parole commissioners, one serving a sentence to life imprisonment may, after serving seven years, make application for parole, and that petitioner, having served seven years, could make such application were it not for the fact that he is also sentenced and committed for the crime of grand larceny, necessitating service of at least one calendar year of his sentence for that crime before being eligible for parole. And petitioner's attorneys argue that, unless at some unforseeable time the board of pardons sees fit to grant a pardon or commutation of sentence as to the life sentence for murder, the time will never arrive permitting petitioner to commence serving his term for grand larceny, or to apply for a parole as to either of such sentences.

Petitioner's counsel concede that the sentence and imprisonment which petitioner is serving for first-degree murder is lawful, and that if this court should grant the relief petitioner seeks by habeas corpus, we would, necessarily, have to remand him to the custody of the warden, to continue serving his term of life imprisonment, unless and until paroled, pardoned, commuted or released according to law. And they advance no specific reason why either the sentence of life imprisonment for first-degree murder, or the indeterminate statutory term

imposed for grand larceny, is either excessive or cruel. They earnestly argue, however, that the combination of the two sentences, and, particularly, the effect of the sentence for grand larceny, in precluding petitioner from being eligible for parole as to the murder conviction, undermines opportunity for rehabilitation—that, in such a situation he should not be confined to the uncertain course of awaiting a possible pardon by executive clemency at some time in the unforseeable future, but should now be enabled to obtain justice in the courts. The justice which petitioner's counsel envision is discharge, in advance, by habeas corpus, from the sentence and future imprisonment for grand larceny, which petitioner has not yet commenced to serve.

It seems fitting to observe in this connection that the crime of first-degree murder of which petitioner was found guilty by the jury was cold-blooded and atrocious. He murdered an officer of the law engaged in the performance of his official duties as a peace officer, and apparently did so solely for the criminal purpose of accomplishing the larceny of an automobile. That he committed two crimes, the effect of the sentences for which now prove more burdensome and difficult than if he were sentenced for only one of same, even though that single crime was that of murder, is merely the result of his own wanton and criminal conduct. Apparently the petitioner stifled, or, at least, failed to give heed to the still small voice of conscience, or of reason and humanity, and permitted himself to follow, entirely unrestrained, the basest sort of selfish, cruel, and vicious criminal impulses. That petitioner did not receive the punishment of death for his crime of murder in the first degree is doubtless because the jury considered his youth. So, when his counsel plead for justice in the courts, and deplore his having to depend upon and wait the prompting of executive, clemency at some "unforseeable" or indefinite time in the future, the factual situation is not, as we conceive it, such as to sustain such appeal to the justice of the courts.

Viewed from a strictly legal standpoint, however, and the long-settled law relating to the scope of the writ of habeas corpus, and of the relief thereunder, being what it is, we find it unnecessary to decide as to the merits of the legal reasons assigned by counsel for the petitioner as the basis upon which they contend that the sentence of petitioner to the term of years above mentioned, for the crime of grand larceny, superimposed upon the sentence for "the rest of his natural life" for the crime of murder in the first degree, was, and is, void.

In finding it unnecessary to pass upon the merits of petitioner's contention at this time, we are but following the action of the United States supreme court in the case of McNally v. Hill, 293 U.S. 131, 140, 55 S.Ct. 24, 79 L.Ed. 238, 244 (cited by respondent's counsel in their brief), a case in which the existing legal situation was remarkably similar to that with which we are now confronted in the instant proceeding.

In McNally v. Hill, supra, the petitioner McNally, was serving a sentence upon the second count of an indictment, and, in order that he might be eligible for parole at an earlier time than he would be if a sentence upon the third count of the indictment, upon which he had not, when making application for habeas corpus, begun to serve, were added to that upon the second count, he contended that the sentence on the third count was void, for certain legal resaons. Both the District Court for the Middle District of Pennsylvania, and the Circuit Court of Appeals of the Third Circuit, 69 F.2d 38, had passed adversely upon the merits of the questions raised by the petitioner, and the matter was before the supreme court upon certiorari, 292 U.S. 619, 54 S.Ct. 773, 78 L.Ed. 1476, issued to said Third Circuit Court of Appeals. Mr. Justice Stone (later Chief Justice), in the opinion, on page 135 of 293 U.S. on page 26 of 55 S.Ct., on page 241 of 79 L.Ed., stated:

"We find it unnecessary to consider the questions raised or decided below, which the petitioner presses here. We conclude that, as it appears from the petition

that the detention of petitioner is lawful under the sentence on the second count, there is no occasion, in a habeas corpus proceeding, for inquiry into the validity of his conviction under the third."

■ Indeed, it is fundamental in the law relating to habeas corpus that the scope of the inquiry permissible under the writ is limited to the question of whether or not the imprisonment or detention of petitioner is presently unlawful, and whether or not he is entitled to his immediate release. This principle is clearly and positively stated under the subject "Habeas Corpus" in 39 C.J.S., Habeas Corpus, sec. 13, page 443, as follows:

"Where the restraint is justified, the writ does not lie. It is well settled that a prisoner has no right to a writ of habeas corpus unless he is entitled to immediate release, and the writ will not issue unless he is *presently* restrained of his liberty without warrant of law. The writ of habeas corpus is concerned solely with the legality of restraint at the time of the filing of the petition for its issue, or by the condition existing at the time of the hearing or final decision thereon. * * *" (Emphasis added.)

In support of the text numerous federal cases are cited, first among which is McNally v. Hill, supra, undoubtedly a leading case on the subject; also, cases are cited from state courts of California, Michigan, Oklahoma, West Virginia, Kansas, Missouri, Washington and Georgia, in support of the above-quoted text.

The opinion of Mr. Justice Stone in McNally v. Hill, supra, which was concurred in by all the other justices, is scholarly, and presents, clearly and ably, that high court's views as to many phases of the subject of habeas corpus. As before stated, the legal situation and the questions involved in that case are very similar to those in the instant case. Consequently, I feel constrained to quote at some length from that opinion. The portion thereof as reported on pages 136–139, inclusive, of 293 U.S., on page 26 of 55 S.Ct., and pages 242 and 243 of 79 L.Ed., is as follows:

"Originating as a writ by which the superior courts of the common law and the chancellor sought to extend their jurisdiction at the expense of inferior or rival courts, it ultimately took form and survived as the writ of habeas corpus ad subjiciendum, by which the legality of the detention of one in the custody of another could be tested judicially. See Holdsworth, History of the English Law, vol. 9, 108–125. Its use was defined and regulated by the Habeas Corpus Act of 1679, 31 Car. II., c. 2. The legislation and the decisions of the English courts interpreting it have been accepted by this Court as authoritative guides in defining the principles which control the use of the writ in the federal courts. See Ex parte Watkins, supra, 3 Pet. [193] 202, 7 L.Ed. 650 [653]; Ex parte Yerger, supra, 8 Wall. [85] 95, 19 L.Ed. 332 [335]; Ex parte Parks, supra, 93 U.S. [18] 21, 22, 23 L.Ed. 787 [788].

"The purpose of the proceeding defined by the statute was to inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful. In this, the statute conformed to the traditional form of the writ, which put in issue only the disposition of the custody of the prisoner according to law. There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law. Diligent search of the English authorities and the digest before 1789 has failed to disclose any case where the writ was sought or used, either before or after conviction, as a means of securing the judicial decision of any question which, even if determined in the prisoner's favor, could not have resulted in his immediate release.

"Such use of the writ in the federal courts is without the support of history or of any language in the statutes

which would indicate a purpose to enlarge its traditional function. Section 14 of the Judiciary Act [28 U.S.C.A. § 2241], by the language already quoted, was at pains to declare that the writ might issue for the purpose of inquiring into the cause of restraint of liberty. Without restraint of liberty, the writ will not issue. Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277; Stalling v. Splain, 253 U.S. 339, 343, 40 S.Ct. 537, 64 L.Ed. 940 [943]. Equally, without restraint which is unlawful, the writ may not be used. A sentence which the prisoner has not begun to serve cannot be the cause of restraint which the statute makes the subject of inquiry.

"Considerations which have led this Court to hold that habeas corpus may not be used as a writ of error to correct an erroneous judgment of conviction of crime, but may be resorted to only where the judgment is void because the court was without jurisdiction to render it, Ex parte Watkins, supra, 3 Pet. 203, 7 L.Ed. 650 [653]; Knewel v. Egan, 268 U.S. 442, 445, 447, 45 S.Ct. 522, 69 L.Ed. 1036 [1039, 1040], lead to the like conclusion where the prisoner is lawfully detained under a sentence which is invalid in part. Habeas corpus may not be used to modify or revise the judgment of conviction. Harlan v. McGourin, 218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101, 21 Ann.Cas. 849; United States v. Pridgeon, 153 U.S. 48, 63, 14 S.Ct. 746, 38 L.Ed. 631 [637]. Even when void, its operation may be stayed by habeas corpus only through the exercise of the authority of the court to remove the prisoner from custody. That authority cannot be exercised where the custody is lawful.

"Wherever the issue has been presented, this Court has consistently refused to review, upon habeas corpus, questions which do not concern the lawfulness of the detention. In re Graham, 138 U.S. 461 [462]; 11 S.Ct. 363, 34 L.Ed. 1051; In re Swan, 150 U.S. 637, 653, 14 S.Ct. 225, 37 L.Ed. 1207 [1211]; Harlan v. McGourin,

[218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101, 21 Ann.Cas. 849], supra; United States v. Pridgeon, [153 U.S. 48, 14 S.Ct. 746, 38 L.Ed. 631], supra; Nishimura Ekiu v. United States, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146; Iasigi v. Van de Carr, 166 U.S. 391, 17 S.Ct. 595, 41 L.Ed. 1045; Hale v. Henkel, 201 U.S. 43, 77, 26 S.Ct. 370, 50 L.Ed. 652 [666]; Ex parte Wilson, 114 U.S. 417, 421, 5 S.Ct. 935, 29 L.Ed. 89 [90]. The lower federal courts have generally denied petitions for the writ where the prisoner was at the time serving a part if his sentence not assailed as invalid."

A significant statement occurs in footnote 6, on pages 139, 140 of 293 U.S., on page 28 of 55 S.Ct., pages 243, 244 of 79 L.Ed., which is as follows:

"The Courts of Appeals in circuits other than the 8th have uniformly denied petitions for writs of habeas corpus when the prisoner was not at that time serving the part of the sentence said to be invalid. Carter v. Snook, [5 Cir.], 28 F.2d 609; Eori v. Aderhold, [5 Cir.], 53 F.2d 840, 841; De Bara v. United States. [6 Cir], 99 F. 942; United States [ex rel. Wash.] v. Carpenter, [9 Cir.], 151 F. 214, 9 L.R.A.,N.S., 1043, 10 Ann.Cas. 509; Mabry v. Beaumont, [9 Cir.], 290 F. 205, 206; Dodd v. Peak, 60 App.D.C. 68, 47 F.2d 430, 431. And to the like effect, see Woodward v. Bridges, D.C. 144 F. 156; Ex parte Davis, c.c., 112 F. 139.

"This was the view of the Court of Appeals for the Eighth Circuit in Connella v. Haskell, 158 F. 285, 289. But in O'Brien v. McClaughry [8 Cir.], 209 F. 816, 820, 821, that court, in order that the prisoner might apply for parole for the valid part of his sentence, remanded the prisoner with directions to the District Court to discharge the prisoner from custody with respect to the invalid sentence, but to remand him to custody upon the valid sentence. This procedure was followed by the same court in Cahill v. Biddle [8 Cir.], 13 F.2d 827–829. But see Morgan v. Sylvester [8 Cir.], 231 F. 886,

887; Hostetter v. United States [8 Cir.], 16 F.2d 921, 923; and Schultz v. Biddle [8 Cir.], 19 F.2d 478, 480, in the same court.

"In Colson v. Aderhold, 5 F.Supp. 111, the district court for northern Georgia entertained a writ for habeas corpus, reduced the sentence from fifty to thirty-five years, and remanded him for custody to serve the valid part of his sentence."

Petitioner, in his brief, has cited O'Brien v. McClaughry, Warden, 8 Cir., 209 F. 816, referred to in said footnote 6, also, Munson v. McGlaughry, 8 Cir., 198 F. 72, 42 L.R.A.,N.S., 302. In the Munson case, Charles Munson, the petitioner, had been indicted, convicted, and sentenced upon two separate counts charging, respectively, burglary of a post-office building with intent to commit larceny therein, and larceny actually committed at the same time. He applied for a writ of habeas corpus, which was denied by the United States District Court for the district of Kansas, and he then appealed to the Circuit Court of Appeals for the eighth circuit. *Before applying for the writ,* Munson had served his sentence for burglary, and was being detained upon the sentence of larceny. The gist of the circuit court's holding is contained in the syllabus, and is as follows:

"Criminal law—sentence—burglary and larceny.

"1. The sentence of a defendant, convicted on two separate counts of an indictment, under sections 5478 and 5456, or 5475, Revised Statutes (U.S.Comp.Stat. 1901, pp. 3683, 3694, 3696 [18 U.S.C.A. §§ 1707, 2112, 2115]) of burglary of a postoffice building with intent to commit larceny and of larceny committed at the same time and as a part of a continuous criminal act, to separate punishments for the burglary and the larceny, is ultra vires and void as to the sentence for the larceny, and after the defendant has satisfied the sentence for the burglary, he is entitled to his release on habeas corpus.

"Habeas corpus—excessive judgment.

"2. The excess of a judgment beyond the jurisdiction of the court which renders it is as void as a judgment without any jurisdiction, and a prisoner held under such excess is entitled to his release by writ of habeas corpus."

In this Munson case, the fundamental principle of the law of habeas corpus hereinbefore stated was not departed from. The prisoner was, when he made application for the writ, *presently deprived of his liberty upon what the appellate court found to be an unlawful sentence, and was entitled to his immediate release.*

The opinion in the case of O'Brien v. McClaughry, supra, referred to, and followed, Munson v. McClaughry, supra, but in its holding the court went far beyond the scope of its decision in Munson v. McClaughry, supra. The situation was similar, in that O'Brien was accused, convicted, and sentenced upon separate counts for breaking and entering a post office with intent to commit larceny, and for actually committing larceny therein, both acts having been committed simultaneously and as part of a continuing transaction. But O'Brien's petition for habeas corpus was presented *while still serving the sentence upon the first count, for burglary, which was admittedly a lawful detention, and at a time when he was not entitled to his immediate release.* He did so in order that he might be eligible for parole upon having served one third of his sentence of five years upon the first count, instead of upon having served one third of eight years, the aggregate of the terms of both sentences. The circuit court for the eighth circuit, following Munson v. McClaughry, held, in effect, that the sentence on the second count was void, and reversed and remanded the case, with directions to the district court to discharge the petitioner from the custody of the warden, as to the charge of larceny, but to remand him upon the charge of breaking into a post office. The learned Circuit Judge Smith, who wrote the opinion, stated, on page 821 of 209 F.:

"We cannot conceive that the second sentence against the petitioner, utterly void as it was and is, should be used to defer his right to apply for a parole. United State v. Pridgeon, 153 U.S. 48, 14 S.Ct. 746, 38 L.Ed. 631. * * *"

This reasoning was logical enough, and perhaps just, but it clearly disregarded the fundamental principles of habeas corpus, in that the prisoner's detention, at the time of the court's decision in the O'Brien case, was not *presently* unlawful, nor was he *then* entitled to his immediate discharge, his remand in order to complete serving his sentence for burglary, being essential.

The United States supreme court, however, in the case of Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153, in the opinion by Mr. Justice Day, decided in 1915, about three years after the decision in Munson v. McClaughry, supra, and about one and a half years after the decision in O'Brien v. McClaughry, supra, referred to the Munson case, and disagreed with and, in effect, overruled same, holding in effect, under the acts of Congress involved (in all three cases), that, notwithstanding the breaking and entering with intent to commit larceny, and the actual larceny itself, were a continuing transaction, and the acts emanated from a single criminal intent, the Congress had seen fit to make the burglarious entry with intent to commit larceny a complete offense, and, also, the actual larceny itself a separate and distinct offense. Manifestly, the effect of this decision by the supreme court was to disapprove both the decision in the Munson v. McClaughry, supra, and that in O'Brien v. McClaughry, supra, for, in the O'Brien case, following the court's reasoning in the Munson case, the opinion, in its holding that the sentence upon the second count, for larceny, was void, and that the prisoner was entitled to release therefrom upon habeas corpus, in order that he might earlier apply for parole, obviously was predicated upon the theory that the criminal acts of the prisoner constituted only the one offense, burglary, and not two offenses, burglary and also larceny, and that

the conviction and sentence for larceny was excessive and void. This theory was clearly rendered untenable by the force and effect of the supreme court's decision in Morgan v. Devine, supra.

In the much later case of Hostetter v. United States, 1926, 16 F.2d 921, a case also decided by the circuit court of Appeals for the eighth circuit, it is stated, on page 923 of 16 F.2d, in the opinion by Scott, district judge:

"Point VI. 'Because of excessive sentence defendant (or plaintiff in error) will be deprived of his right to petition for parole at the time entitled thereto under the provisions of the Parole Act of June 25, 1910,' as amended (Comp.St §§ 10535–10544 [18 U.S.C.A. §§ 3570, 4164, 4202–4207, 4281]).

"This point is attempted to be sustained by citation of the case of O'Brien v. McClaughry, [8 Cir], 209 F. 816. The opinion in the cited case, as written, is not in our opinion an authority on the proposition quoted. It may not be inappropriate to say, however, that the case of O'Brien v. McClaughry follows the case of Munson v. McClaughry [8 Cir.], 198 F. 72, 42 L.R.A.,N.S. 302, and that the United States Supreme Court, in the case of Morgan v. Devine, 237 U.S. 632, at page 640 et seq., 35 S.Ct. 712, 59 L.Ed. 1153, disapproved the case of Munson v. McClaughry, and we think both the McClaughry Cases in effect overruled."

It is clear from the foregoing statement in Hostetter v. United States, supra, that since Morgan v. Devine, supra, the circuit court of appeals of the eight circuit has fallen in line with the other United States circuit courts of appeals of all other United States circuits in adhering to the fundamental principles of the law as to habeas corpus, hereinbefore stated and explained. And McNally v. Hill, supra, decided by the United States supreme court in 1934, containing the masterly opinion by Mr. Justice Stone (from which we have herein before extensively quoted) appears to confirm and make unmistakably clear the position of the federal courts

upon the phases of the law as to habeas corpus which are applicable in the instant case. Hereinbefore, reference has also been made to the fact that the state courts, generally, have adhered to the principles of habeas corpus law hereinabove discussed, and mention has been made of eight states in which cases, cited in the footnotes to page 443 of 39 C.J.S., Habeas Corpus, sec. 13, have been decided, and from said page 443 quotation has been made of a clear statement of those principles.

 It has been held repeatedly, and, in fact is one of the cardinal principles of the law as to habeas corpus, that the remedy of habeas corpus must not be permitted to be converted into a mere substitute for remedy by appeal, writ of error or certiorari. When, as in the instant case, a party is not being illegally deprived of his liberty and is not entitled to immediate release from custody, but seeks to be relieved from a judgment and sentence which he contends has been unlawfully imposed, even though same may require his imprisonment to commence at a future time, the remedy in Nevada is, generally, by appeal, and, in certain situations, by certiorari. If a party seeking release from a void or voidable judgment has permitted his time to take an appeal to expire, without taking the necessary steps to initiate such appeal, he cannot obtain relief by habeas corpus from such judgment, unless he is unlawfully restrained of his liberty thereunder.

The respondent has cited, in that connection, the case of Ex parte Tani, 29 Nev. 385, 91 P. 137, 13 L.R.A., N.S., 518. In that case Mr. Justice TALBOT, in the opinion, included an exhaustive collection of authorities pertaining to, or showing the proper application of the remedy of habeas corpus. Among other things, the learned justice stated the following in said opinion, as reported on page 399 of 29 Nev., and page 141 of 91 P.:

"This court has decided that the writ of habeas corpus is not intended to take the place of an appeal, writ of error, or certiorari, and cannot be used for the purpose of reviewing errors or irregularities in the proceedings

of a court having jurisdiction (Ex parte Smith, 2 Nev. 338; Ex parte Maxwell, 11 Nev. 428; Ex parte Winston, 9 Nev. 71; Ex parte Twohig, 13 Nev. 302; Ex parte Bergman, 18 Nev. 331, 4 P. 209); that, if the prisoner is held under a valid commitment, the legality of other commitments need not be considered until his term of service under the good commitment has expired (Ex parte Ryan, 17 Nev. 139, 28 P. 1040; Ex parte Ryan, 10 Nev. 261); * * *."

See, also, Ex parte McKay, 63 Nev. 262, 168 P.2d 315, and, particularly, the numerous authorities cited, on pages 267, 268 of 63 Nev., and on pages 317, 318 of 168 P.2d in the opinion by Mr. Justice DUCKER.

██ The law is well settled in this state that a prisoner serving under a valid judgment and sentence, and held under a valid commitment, cannot invoke the remedy of habeas corpus to relieve him from another judgment, sentence and commitment under which he has not commenced to serve, for the reason that he is not, by such second commitment, unlawfully, or at all, *presently* deprived of his liberty. Such an application for habeas corpus, under such circumstances, is premature. The petitioner in the instant proceeding, if and when his sentence and commitment for murder in the first degree shall have been lawfully terminated, and he has commenced to serve his sentence for grand larceny, will then, but not before, be in a position in which he can appropriately seek relief by habeas corpus, by establishing, if he can sufficiently do so, that the judgment, sentence and commitment for grand larceny is void.

In view of the overwhelming weight of the authorities, both of the federal and state courts, and of the former holdings and pronouncements of this court, it is incumbent upon us to dismiss the instant proceeding. It is, therefor, ordered that this proceeding be, and hereby is, dismissed, and petitioner is remanded to the custody of the warden of the state prison.

BADT and EATHER, JJ., concur.